# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1885, IN THE SEVEN-
TIETH YEAR OF THE STATE.

No. 12,701.

THE CENTRAL UNION TELEPHONE COMPANY v. BRADBURY.

| 106 | 1 |
|---|---|
| 132 | 586 |
| 106 | 1 |
| 146 | 191 |
| 106 | 1 |
| 151 | 142 |
| 106 | 1 |
| 153 | 488 |
| 106 | 1 |
| 155 | 668 |
| 106 | 1 |
| 165 | 500 |

TELEPHONE.—*Common Carrier.*—A telephone company is a common car-
rier of news, in the sense in which a telegraph company is a common
carrier.

SAME.—*Service Must be Impartial.*—The rule that requires a common car-
rier to serve all, so far as able, with impartiality, is applicable to a tel-
ephone company, engaged in a general telephone business.

SAME.—*Act of April 8th, 1885.*—The second section of the act of April 8th,
1885 (Acts 1885, p. 151), providing that a telephone company shall sup-
ply applicants with telephone facilities without discrimination or par-
tiality, is valid.

SAME.—*Legislature May Regulate Charges.—Patent.—Act of April 13th, 1885.*—
The Legislature has power to regulate, as in the act of April 13th, 1885,
the price which a telephone company, engaged in a general telephone
business, may charge for the use of its instruments, notwithstanding
the patented quality of the latter.

SAME.—*Word " Telephone," Meaning of.*—The word " telephone," as used

in the act of April 13th, 1885, has reference to an organized apparatus, or combination of instruments, usually in use in transmitting and receiving telephonic messages, and not to a single instrument technically known as a telephone.

From the Marion Superior Court.

J. E. McDonald, J. M. Butler, A. L. Mason, T. A. Hendricks, C. Baker, O. B. Hord, A. W. Hendricks, A. Baker, E. Daniels, N. Williams, J. L. Thompson and C. S. Holt, for appellant.

A. C. Harris, W. H. Calkins, C. Byfield, L. Howland and D. M. Bradbury, for appellee.

NIBLACK, C. J.—An act, imposing certain duties upon telegraph and telephone companies, was passed by the General Assembly of this State, which was approved and went into effect on the 8th day of April, 1885. The second section of that act is as follows:

"Every telephone company with wires wholly or partly within this State, and engaged in a general telephone business, shall within the local limits of such telephone company's business supply all applicants for telephone connections and facilities with such connections and facilities without discrimination or partiality, provided such applicants comply or offer to comply with the reasonable regulations of the company; and no such company shall impose any conditions or restrictions upon any such applicant that are not imposed impartially upon all persons or companies in like situation, nor shall such company discriminate against any individual or company engaged in any lawful business, or between individuals or companies engaged in the same business, by requiring as a condition for furnishing such facilities that they shall not be used in the business of the applicant, or otherwise for any lawful purpose." Acts 1885, 151.

On the 13th day of April, 1885, the General Assembly passed another act, entitled "An act to regulate the rental allowed for the use of telephones, and fixing a penalty for

its violation," the first section of which is in the following words : " That no individual, company or corporation, now or hereafter owning, controlling or operating any telephone line in operation in this State shall be allowed to charge, collect or receive as rental for the use of such telephones, a sum exceeding three dollars per month where one telephone only is rented by one individual, company or corporation. Where two or more telephones are rented by the same individual, company or corporation, the rental per month for each telephone so rented shall not exceed two dollars and fifty cents per month." Acts 1885, 227.

At the time of the enactment of these statutes, the Central Union Telephone Company, a corporation organized under the laws of the State of Illinois, was, as it still is, the owner and operator of a telephonic exchange and a system of telephone lines within and in the immediate vicinity of the city of Indianapolis, in this State, being then and still the only company engaged in the telephone business within that city.

On the 31st day of August, 1885, Daniel M. Bradbury, a resident citizen of Indianapolis, addressed to this telephone company the following letter :

"INDIANAPOLIS, IND., August 31st, 1885.
"*The Central Union Telephone Company :*

"I have a law-office in room No. 12, in Talbott & New's Block, at No. 29½ on North Pennsylvania street, in this city. I desire to be placed in telephonic communication, by means of your telephone, with the patrons in this city, and courts. I therefore demand the use of a telephone in my said office, and I agree to pay as rental for the use thereof the sum of three dollars per month, and to comply with all reasonable rules and regulations in force or hereafter made by said company, not inconsistent with the laws of this State. I further agree to take good care of the telephone and to use it for my business and convenience only.      D. M. BRADBURY."

To this, John E. Hockett, the district superintendent in

---

The Central Union Telephone Company *v.* Bradbury.

---

charge of the company's business at Indianapolis, responded as follows:

"INDIANAPOLIS, IND., September 4th, 1885.

"*D. M. Bradbury, Esq., Attorney at Law,* 29½ *North Pennsylvania Street, Indianapolis, Ind.:*

"DEAR SIR: As agent of the Central Union Telephone Company in this city, I have just received your letter of August 31st, 1885. It is the desire of the company to comply with your wishes, if, upon ascertaining them, it is practicable to do so. But, as your letter does not indicate with sufficient clearness what it is you request the company to do for the price indicated by you, I request, upon behalf of the company, that you indicate your wishes with more exactness. Do you desire the company to place in your office one hand telephone and cord, one magneto bell with backboard and battery box, one Blake transmitter and one cell battery, and to connect these by wire for your exclusive use with the company's exchange in this city, and also to furnish with exchange service with the Indianapolis exchange subscribers, and with inspection and maintenance of lines and apparatus? Or do you desire the company to furnish you with some other and lower grade of equipment and service? Perhaps you may not be aware that the company has several grades or classes of equipment and service, and that the price depends on the character of equipment and service furnished. The hand telephone and cord, the magneto bell with backboard and battery box, and, if desired, the Blake transmitter and the cell battery, are placed in the office or place of business of the patron of the company. These are connected by wire, of which the patron has, if desired, the exclusive use, with the company's exchange in this city, and the service of connecting this wire with the wires of the subscribers of the company's said exchange is performed by the company at its exchange in this city. For the use of these instruments so placed in the office of the patron, and for the use of the wire connecting them with the company's exchange in this city,

and for such exchange service, and for construction and main-
tenance and inspection of lines and apparatus, the. company's
charges are as follows: For the rental of the hand telephone,
$10 per year; for rental of the Blake transmitter, $10 per
annum, and for the additional service, material and facilities
furnished by the company, the charge to you will be ($40)
forty dollars additional per annum, the same being based
upon the distance from your office to the company's exchange
in this city. The hand telephone and the Blake transmitter
are patented inventions, secured to the patentees by letters
patent of the United States, and for the use of which the
company pays royalties as licensee to the patentees or their
assigns. The hand telephone and Blake transmitter, two
telephones, are constructed by, belong to and are the prop-
erty of the American Bell Telephone Company, which is the
owner of the patents covering them. The magneto bell is
also covered by letters patent of the United States, and our
company purchase them of the patentee or of his licensees,
but they can only be purchased to be used in connection with
telephones covered by patents owned by the American Bell
Telephone Company. The charges above are reasonable, and
the least amounts for which we can furnish you the instru-
ments, connection and service above specified. If desired
by you, however, the company will furnish you the use of
one hand telephone and cord and one magneto bell, to be
placed in your office, and a wire connection between the com-
pany's exchange in this city, and also exchange service from
7 A. M. to 6 P. M. each day, Sundays excepted, with sub-
scribers of the Indianapolis exchange, the company reserv-
ing the right of placing other telephone subscribers upon
the same wire at its discretion, together with inspection and
maintenance of the line and apparatus, and for the use of
said last named instruments, connection and service above
specified, the company's charges will be at the rate of $3
per month. Both classes of service above mentioned will be

furnished, subject to the reasonable rules and regulations of the company.

"Please answer this letter at your earliest convenience, and indicate to us, on behalf of the company, with the necessary precision, just what you desire the company shall do.

"Yours truly,     J. E. Hockett,

"Agent Central Union Telephone Co."

In reply, Bradbury addressed the telephone company in the following terms:

"Indianapolis, Ind., September, 1885.

"*To the Central Union Telephone Co.* :

"My demand upon you was for the use of your telephone lines in this city as was and is lawfully supplied to the superior courts of this county and the public generally in this city, and not any partial, exceptional or qualified use.

"Resp'y,     D. M. Bradbury."

Bradbury thereupon, in the name of the State, and upon his own relation, filed a complaint in the court below charging that the said Central Union Telephone Company was a common carrier of telephonic messages, and that, under the act of April 13th, 1885, he had become entitled to demand and to receive from the company the highest grade or class of telephonic service for three dollars per month, and demanding that an alternative writ of mandate might be issued to said telephone company, requiring it to furnish to him such highest grade or class of telephonic service at the rate of three dollars per month, or to show cause why the same should not be done.

The company appeared to the action, and, waiving the issuance and service of an alternative writ of mandate, answered, averring that all the instruments used in its business were new and useful inventions covered by letters patent from the United States, and were only so used by it, as well as its patrons and subscribers, under licenses granted by the owners of such letters patent, for which it was compelled to pay large royalties; that by reason of the expensive character of its

business, it could not furnish Bradbury with the highest grade or class of telephonic service at the rate of three dollars per month, without an actual pecuniary loss; at the same time denying the power of the Legislature of this State to regulate the prices it may charge for the rental of telephonic instruments used by it in the prosecution of its business or for any other service; also averring its readiness and willingness to furnish Bradbury with a hand telephone and cord, and a magneto bell to be placed in position in his office and connected with its exchange, and to accord to him exchange service from 7 o'clock A. M. until 6 o'clock P. M. each day, Sundays excepted, at the rate of three dollars per month, and offering to agree that a judgment to that extent might be entered against it; also denying that it was a common carrier, or amenable to the laws governing common carriers.

Issue being joined, the court below, at special term, after hearing the evidence, made a finding that Bradbury was entitled to the relief demanded by him, and accordingly entered judgment that the company should furnish to him, for his use, one hand telephone and cord, one magneto bell with back board and battery box, one Blake transmitter, and one cell battery, and accord to him all the usual exchange connections and exchange facilities, at the rate of three dollars per month; and this judgment was affirmed at general term.

Various questions were reserved at the trial, and most of the questions thus reserved have been exhaustively argued here. But the validity of the act of April 13th, 1885, in the first instance, and the meaning of the word "telephone," as used in that act, in the second instance, have been treated, and practically accepted, as the controlling questions in the cause. As incidental, however, to the validity of this last named act, the binding force and practical application of so much of the act of April 8th, 1885, as relates to telephone companies, has received some attention in argument.

We held in the recent case of *Hockett* v. *State*, 105 Ind. 250,

that the Central Union Telephone Company has become and is a common carrier of news, in the sense in which a telegraph company is a common carrier; that is to say, that, since its organization, its business has been, as it still is, to carry telephonic messages over lines of wire, erected for that purpose, and set apart to what is in effect a public use. Our holding in that case, also, was to the effect that the company was a common carrier, in the sense stated, on the 13th day of April, 1885, when the act of that date was passed. The same parity of reasoning requires us to hold that the company was, in like manner, a common carrier on the 8th day of April, 1885, when the act of that date went into effect. On this subject, see the case of State, ex rel., v. Nebraska Telephone Co., 22 N. W. Rep. 237; also, State, ex rel., v. Telephone Co., 36 Ohio St. 296, and American R. Tel. Co. v. Connecticut Telephone Co., 44 Am. R. 237, and notes.

That the business of a common carrier of whatever class, is a public employment, and that a common carrier is required to serve all so far as he is able to do so, and that, too, with substantial impartiality, are legal propositions too well established to require the citation of authorities, and these legal relations of common carriers to the general public were held, and we think correctly, to be applicable to telephone companies engaged in a general telephone business, by the case of State, ex rel., v. Nebraska Telephone Co., above cited.

The second section of the act of April 8th, 1885, herein above set out, so far as it affects any question involved in this cause, is little, if anything, more than a statutory extension of the law, applicable to common carriers generally, to telephone companies doing a general telephone business, and as such telephone companies are common carriers independently of any statute, and as common carriers are proper subjects of legislative control, we see no objection to the validity of that section. Munn v. Illinois, 94 U. S. 113; Hockett v. State, supra.

The Central Union Telephone Company *v.* Bradbury.

It was seemingly conceded at the trial, and has been impliedly so conceded in argument, that the Central Union Telephone Company might easily and conveniently have placed Bradbury in telephonic connection with its exchange and other subscribers, through the medium of then existing and contiguous lines of wire, if it and he could have agreed upon the price to be charged for the service desired. No excuse has, therefore, been presented on account of inability of the company to furnish the required service without incurring some unreasonable additional expense or unduly extending its business.

The power of a State Legislature to regulate the prices which a telephone company, engaged in a general telephone business, may charge for the use of its instruments, was fully and carefully considered in the case of *Hockett* v. *State,* above referred to, and the conclusion then reached was, that, notwithstanding the patented quality of the instruments in question, the power of a State Legislature in that respect is plenary and complete. See, also, *Patterson* v. *Kentucky,* 97 U. S. 501. We also held, in that case, that the word "telephone," as used in the act of April 13th, 1885, had reference to an organized apparatus, or combination of instruments, usually in use in transmitting, as well as in receiving, telephonic messages, and composed of instruments similar to those enumerated in the judgment in this case at special term, and not to a single instrument technically known as a "telephone."

The construction thus placed upon the act last named continues to meet the approbation of our judgment, and may now be considered an established rule of statutory construction in this State.

The judgment is affirmed, with costs.

Filed March 23, 1886.