The Central Union Telephone Company *v.* The State, *ex rel.* Falley.

Filed April 4, 1889.

———◆———

No. 14,269.

THE CENTRAL UNION TELEPHONE COMPANY *v.* THE STATE, EX REL. FALLEY.

TELEPHONE.—*Instrument of Commerce.*—*Common Carrier.*—The telephone is an instrument of commerce, and persons or corporations engaged in the general telephone business are common carriers of news.

SAME.—*Discrimination.*—*Mandamus.*—A person or corporation engaged in operating telephone lines, furnishing connections, facilities and service to business houses, persons and companies, can be compelled by mandate, on the petition of one discriminated against, to furnish to such a one the same service that it furnishes to others, independent of any statutory provision against discrimination.

SAME.—*Character of Service.*—*Statutory Regulation.*—*Rental Charges.*—*Toll-Stations.*—A company doing a general telephone business in this State can not evade the acts of April 8th and April 13th, 1885 (Acts of 1885, pp. 151, 227), prescribing the duties of such companies and regulating the rental to be charged for the use of telephones, by ceasing to do a rental business and establishing public toll-stations, but under such acts any person, within the local limits of the business of such a company in a town or city, has the right to demand and receive a telephone, with connections, facilities and service, at the rate per month fixed therein.

SAME.—*Lines Extending into Other States.*—*Interstate Commerce.*—The acts of

1885, relating to telephone companies, apply merely to the service to be provided to persons within this State, and they are, therefore, not open to the objection that they are void as attempting to regulate interstate commerce, although the lines of a company doing business in this State may extend into other States.

SAME.— *Violation of Statute.—Penalty.—Mandamus.*—The fact that the statute prescribes a penalty for the violation of its provisions, does not abridge the right of an aggrieved party to compel the telephone company, by mandamus, to furnish him with the service to which he is entitled.

SAME.—*Municipal Service.—Extra Territorial Lines.*—In an action by a resident of a city to compel a telephone company to furnish him with telephonic service within such city, an answer that the lines of the company extend outside of the State, and that by furnishing the plaintiff with an instrument and service he would be placed in communication with points outside of the State, is bad.

From the Tippecanoe Circuit Court.

*J. R. Coffroth, T. A. Stuart* and *A. A. Thomas,* for appellant.

*W. D. Wallace, S. P. Baird* and *F. S. Chase,* for appellee.

OLDS, J.—This is an action, brought by the relatrix, to compel the appellant, by mandate, to furnish her, at her place of business in the city of Lafayette, a telephone and telephonic connections and facilities. The petition is in one paragraph, averring the following facts: That the defendant, the Central Union Telephone Company, is a corporation duly organized under the laws of the State of Illinois; that it is now, and was at the time of the doing of the acts and things hereinafter complained of, and for three years last past has been, owning and operating a system of telephone lines and wires, and engaged in doing a general telephone business in the city of Lafayette, county of Tippecanoe, State of Indiana; that the relatrix, Susana B. Falley, is now, and for more than three months last past has been, carrying on business under the name and style of the " Falley Hardware Company," and the occupant of a business room in said city, at numbers 37 and 39 on South Third street therein, and her business room is within the limits of the defendant's tele-

phone business in said city; that the relatrix did, on the 25th day of October, 1887, demand of the defendant that said relatrix be furnished by said defendant with a telephone and telephonic connections and facilities necessary to place the relatrix, at her said business room, in telephonic connection with the patrons of defendant in said city; that the relatrix did then, and at the time of making said demand, tender to the defendant the sum of nine dollars, lawful currency of the United States, as a rental in advance for such telephone, telephonic connections and facilities, for the first three months' use thereof, and at the same time relatrix offered to comply with the reasonable rules and regulations of said defendant, not inconsistent with the laws of this State; that the defendant at the time said demand was made refused, and ever since has wilfully, wrongfully and without cause, failed and refused, and still fails and refuses, to furnish to said relatrix, at her said business room, the use of such telephone and telephonic connections and facilities; that the defendant is a common carrier of telephonic messages between its patrons within the limits of said city of Lafayette, and that said relatrix, under the laws of the State of Indiana, is entitled to demand and receive from the defendant the use of the telephone and telephonic connections, facilities and service, necessary to place the relatrix, at her said business room, in telephonic communication with the patrons of defendant in said city, for the compensation of three dollars per month, as fixed and prescribed by the statute of said State, and for such compensation she is entitled to receive from the defendant the use of a telephone, and the highest and best grade of telephonic connections, facilities and service, used and furnished by said defendant in carrying on its business in said city. Prayer for an alternative writ of mandate, and, on final hearing, a peremptory writ compelling defendant to furnish relatrix with such telephone and telephonic connections, facilities and service, which petition was duly verified. Alternative writ of mandate issued upon the complaint in due

form, setting forth the filing of the complaint and the allegations of the complaint, and concluding by commanding the appellant to furnish the relatrix with a telephone and telephonic connections and facilities as asked, or in default thereof to appear before the court and show cause.

In answer to the writ, appellant appeared by attorneys and demurred to the writ for the cause that the writ did not state facts sufficient to constitute a cause of action, which demurrer was overruled, to which ruling of the court on the demurrer appellant exceptd. Appellant then filed an answer in five paragraphs. The first is a general denial, and the other paragraphs allege the following facts:

2d. The defendant avers that it is a corporation, under the laws of Illinois; that for several years prior to the demand by plaintiff, as alleged in the complaint, defendant had been engaged in carrying on its business as a telephone company in the States of Indiana, Ohio, Illinois and Iowa; that long before, and at the time of, the happening of the things complained of in plaintiff's complaint, defendant had, ever since had, and now has, its lines and wires on its poles in the city of Lafayette, and in various cities and towns in the States aforesaid, and during all of said time, and still has, offices in said various cities and towns in each of said States, connected with each other, and many of its offices and telephones in this State are connected by means of its wires with defendant's offices and instruments in the States of Ohio, Illinois and Iowa; that defendant, during all of said time, was, has been, and is engaged in transmitting messages for the public for hire over its said wires, not only between towns and cities in each of said States, but also between the several States aforesaid; and during all of said time defendant has been, and is, engaged in, and carrying on, interstate commerce; that it admits that plaintiff, claiming that, under the act of the General Assembly of the State of Indiana, she was entitled to have a telephone in her store, and to be furnished with telephonic service under said law, tendered defendant nine

dollars, and demanded to have a telephone in her store; and defendant admits that it refused to furnish relatrix with a telephone, and with telephonic connections and service, because if defendant had complied with said request and demand she would thereby be furnished facilities for transmitting messages from Lafayette to various places in the States of Ohio and Illinois, where defendant had and has its wires and offices, as aforesaid, for said sum of money, which was unreasonable and greatly less than defendant charges its other customers, and which, as defendant was engaged in carrying on interstate commerce, could not be required of it.

3d. The third paragraph states that it, defendant, is a corporation under the laws of Illinois, and is engaged in carrying on a general telephone business in the city of Lafayette; that, on the 2d day of March, 1886, it in good faith announced to the public, and it was then its intention, from and after the 2d day of March, 1886, not to furnish telephones under a rental system, except as it did so until its contracts then in existence expired; that at said time it had a large number of contracts with its various subscribers in the city of Lafayette for the use of its telephones, by the terms of which defendant was compelled to maintain its exchange in said city, and furnish telephone facilities to said persons until the 30th day of September, 1886; that defendant treated all applications for telephones and telephonic service alike; that, in good faith, and without discrimination, having determined to cease doing a general rental telephone exchange business in this State, it refused to furnish telephones and telephonic connections under a general rental telephone exchange system, except to those with whom it had contracts, as aforesaid; that it admits the demand and tender by relatrix, and the refusal by defendant to furnish her with a telephone, because it had determined to cease, and had in fact ceased, doing a general rental telephone exchange business in said city, and so informed relatrix, and since that time has not been, and is not, engaged in a general telephone business under a

The Central Union Telephone Company *v.* The State, *ex rel.* Falley.

rental system in said city; that after it had announced its determination to cease doing a general rental telephone exchange business, it, in June, 1886, determined to offer to the public, and did in fact offer to the public, to furnish telephonic service and connections by means of public toll-stations at various points in said city, which system of public toll-stations defendant had in operation at and long before the time of the demand by relatrix for telephone and telephonic connections. Defendant denies that it owns or operates a telephone exchange under the rental system in said city of Lafayette, Indiana, or that it did at the time of the commencement of this action; that, although it had formerly conducted a telephone exchange under the rental system, it abandoned and terminated the same as soon as its contracts in existence were terminated. The defendant avers that what is known as a telephone exchange under a rental system, is where lines and telephone instruments are furnished to subscribers for private use, under contracts limiting the use of the facilities furnished to such subscribers and their employees, for a stipulated rental per month, quarter or year, and in which the instruments furnished pass into the possession of such subscribers; the lines so furnished to subscribers center at a switching-station, where the line of any subscriber is connected with that of any other subscriber, on request, for purposes of communication, authorized by the contract. In the exchange system, a set of telephone instruments, connected by a wire with the central station, is furnished to any reputable person who desires to become a subscriber to the exchange, and signs the usual form of contract, and complies with its conditions. A public toll system of telephone service is one where the telephone company furnishes no instruments or lines for private use for a rental charge, but establishes stations of its own, for the accommodation of the public, in such places as may appear to it necessary to furnish telephonic facilities and connections to the public, charging a toll for each use of its instruments and lines, such toll-

stations being in charge of agents selected, appointed and paid by the telephone company, the instrument at such station remaining in the possession and control of the company, through its agents; the lines from such stations extend to a switching-station, where one is connected with another upon the order of any agent, which agent collects from the user the toll charged for each and every connection, and accounts for the same to the company; that such toll system is simply an extension of the toll system which the defendant, since its organization for some years past, and prior to the enactment of the telephone statutes in this State, was maintaining, and has maintained, in various towns of this State, providing telephonic facilities between individuals residing in different towns where toll-stations are established; that, at the time of the commencement of this suit it did not, does not now, nor does it intend to, discriminate against the relatrix, and is still, and now is, ready and willing to supply the relatrix, and all applicants, with such facilities as it has in said city.

The paragraph further sets out in detail the manner of operating and conducting the toll-station system, and alleges that all its business in the city of Lafayette, at the time of the commencement of this suit, and ever since, has been conducted on that system, and that it was not at that time, nor since, doing, and does not intend to do, a telephone business under the rental system; that notices of the rates and fees charged for the use of the telephones are posted in each station. A copy of the contract that it enters into with its agent is set out. The answer denies any discrimination against the relatrix, or any intention to discriminate, and alleges that the toll-stations are so distributed as to accommodate the general public, and that there are a number in the vicinity of the place of business of the relatrix, and denies being a common carrier, and denies being bound to rent telephones at all, or as demanded by relatrix; that defendant offered to establish a toll-station on relatrix's said premises, and she refused to allow it to be done, or to sign a contract of agency.

The Central Union Telephone Company *v.* The State, *ex rel.* Falley.

The following is a copy of the contract set out with this paragraph of answer:

## "CENTRAL UNION TELEPHONE COMPANY—STATION CONTRACT—CENTRAL STATION.

"This agreement, made this — day of ——, 188–, by and between the Central Union Telephone Company, its successors or assigns, party of the first part, and ——, party of the second part, witnesseth: The second party agrees: 1st. To permit the party of the first part to place its wires, fixtures, telephone instruments and apparatus in and upon the premises of the second party, located on —— street, in the —— of ——, county of ——, in the State of Indiana, for the purpose of doing a general telephone and telegraph business; that he, ——, said second party, is to furnish proper office room, rent, light and fuel, and necessary employees to transact all business of the party of the first part, at said station, in a prompt and business-like manner; to collect for all such business such regular rates as may be fixed from time to time by the party of the first part, and the same to account for to the said first party; and further, to observe and conform to such rules and regulations touching said business as may from time to time be prescribed by said first party. In consideration thereof, and in full payment therefor, the first party agrees to pay to the second party five per cent. commission upon the receipts at said station for business with regular stations within —— miles of the county court-house in said ——, and —— upon receipts for business going over to extra-territorial lines of the first party. It is further mutually agreed that should the telephone or telegraph station herein referred to fail to be sufficiently remunerative, or its management by the party of the second part prove to be unsatisfactory to the party of the first part, the right to terminate this agreement at any time is reserved by the party of the first part; but otherwise, this agreement is to be in force and effect until the last of ——, 188–, and

thereafter until the party of either part shall have given the party of the other part ten days' written notice of his or its desire to discontinue the same. Witness the hands of the parties," etc.

4th. The fourth paragraph alleges the ceasing to do business by the defendant under the rental system and conducting the same under a toll-station system, as alleged in the third paragraph, and avers that one Edward E. Falley is a partner of relatrix, and that they are trading under the name of "Falley Hardware Company," and that prior to the demand by relatrix for a telephone; as set out in the complaint, defendant had a telephone in their place of business under the toll-station system, and said firm acted as the agent of defendant in the operation of the telephone; that said firm terminated said contract of agency and the relatrix then made the demand as alleged, and defendant refused for the reasons as stated in the third paragraph of answer.

The fifth paragraph is not in the record.

Appellee filed separate demurrers to the second, third, fourth and fifth paragraphs of answer for the cause that neither of said paragraphs stated facts sufficient to constitute a defence or return to said alternative writ of mandate.

The first paragraph of answer was withdrawn by appellant, and the court sustained the demurrers to the second, third, fourth and fifth paragraphs; to which ruling of the court in sustaining the demurrers to the several paragraphs of answer appellant duly excepted, and appellant failing to amend or plead further, the court rendered judgment on said demurrers, ordering and adjudging that a peremptory writ of mandate issue, commanding appellant to forthwith furnish and supply relatrix, at her business rooms, numbers 37 and 39 South Third street in the city of Lafayette, Indiana, with a telephone, and with the highest and best grade of telephonic connections and facilities and service used, furnished and employed by said appellant in carrying on its said business in said city, and that might be necessary to place her, at her said

place of business, in telephonic communication with all persons in said city having at their places of business or residences telephones placed and maintained there by said appellant; and that said appellant continue to supply and furnish the same, etc., so long as appellant continued to carry on a general telephone business in said city, and so long as relatrix shall continue to observe the reasonable rules, etc., and pay the compensation of three dollars per month. To the rendering of which judgment the appellant excepted. Appeal prayed and granted to this court. Errors are properly assigned on the rulings of the court.

This action is brought under the acts of 1885, prescribing the duties of telephone companies, and to regulate the rental to be paid for the use of telephones, and requires a construction of these acts. On April 8th, 1885, the following law was enacted:

"AN ACT prescribing certain duties of telegraph and telephone companies, prohibiting discrimination between patrons, providing penalties therefor, and declaring an emergency."

SECTION 1. Relates exclusively to telegraph companies.

"SEC. 2. Every telephone company, with wires wholly or partly within this State, and engaged in a general telephone business, shall within the local limits of such telephone company's business, supply all applicants for telephone connections and facilities with such connections and facilities without discrimination or partiality, provided such applicants comply or offer to comply with the reasonable regulations of the company; and no such company shall impose any conditions or restrictions upon any such applicant that are not imposed impartially upon all persons or companies in like situation, nor shall such companies discriminate against any individual or company engaged in any lawful business, or between individuals or companies engaged in the same business, by requiring as a condition for furnishing such facili-

ties that they shall not be used in the business of the applicant, or otherwise for any lawful purpose.

" Sec. 3. Any person or company violating any of the provisions of this act shall be liable to any party aggrieved in a penalty of one hundred dollars for each offence, to be recovered in a civil action in any court of competent jurisdiction : *Provided,* Nothing in this act shall be construed to take away or abridge the right of such aggrieved party to appeal to a court of equity to prevent such violations or discriminations, by injunction or otherwise." Acts of 1885, p. 151.

On the 13th of April, 1885, another law was enacted, which is as follows :

"An Act to regulate the rental allowed for the use of telephones, and fixing a penalty for its violation.

" Section 1. That no individual, company or corporation, now or hereafter owning, controlling or operating any telephone line in operation in this State, shall be allowed to charge, collect or receive as rental for the use of such telephones, a sum exceeding three dollars per month where one telephone only is rented by one individual, company or corporation. Where two or more telephones are rented by the same individual, company or corporation, the rental per month for each telephone so rented shall not exceed two dollars and fifty cents per month.

" Sec. 2. Where any two cities or villages are connected by wire operated or owned by any individual, company or corporation, the price for the use of any telephone for the purpose of conversation between such cities or villages, shall not exceed fifteen cents for the first five minutes, and for each additional five minutes no sum exceeding five cents shall be charged, collected or received.

" Sec. 3. Any owner, operator, agent or other person, who shall charge, collect or receive for the use of any telephone any sum in excess of the rates fixed by this act, shall be deemed guilty of a public offence, and on conviction shall be

fined in any sum not exceeding twenty-five dollars." Acts of 1885, p. 227. This act took effect July 22d, 1885.

It is insisted by appellant that the act of April 8th is simply an act prohibiting discriminations by telephone companies, and providing a penalty for any discrimination by such companies, and that the act of April 13th prescribes the price which may be charged for the rental of telephones, when the same are rented, and prescribes penalties for asking or taking a greater rental, and that unless they inhibit all other systems or methods of telephony, other than the rental, this case was decided wrongly by the court below; and that the title to the act of April 8th declares it to be an act prohibiting discrimination between patrons, and prescribing penalties therefor.

It is further claimed by appellant that the answers show that appellant was not engaged in a general telephone business at Lafayette at the time of appellee's demand, but was engaged only in a limited business, and that it offered to furnish appellee such limited service, and has in all respects offered to treat her in the same manner as it was treating its other patrons, but that she wanted a different service than that in which appellant was engaged; in other words, she wanted appellant to discriminate in her favor, and to grant her demand would make appellant amenable to the law against discrimination.

In determining this case it is important to consider the nature of the telephone, how operated, the utility of it, and the rights of the parties in the absence of the statutes enacted by the Legislature. The telephone differs from the telegraph very materially, in this, that the transmission of news, the sending and receiving of messages by telegraph, can only be done by those having a knowledge of the business, and having a knowledge of the art and science of telegraphy. To others, who are not telegraphists, the telegraph would be useless. It is, therefore, only beneficial to the general public when operated by persons or companies keeping in their em-

ploy telegraphists, to send, receive and transmit messages, and messengers to deliver them to persons to whom addressed. A telegraphic instrument in the house or place of business of a patron of the company, connected with the wires of the company, with facilities for transmitting and receiving messages by telegraph, would be of no use to a patron, unless he was learned in the art of telegraphy. But the telephone is entirely different; a telephone, with proper connections and facilities for use, can be used by any person; it requires no experience to operate it. Webster defines it as "An instrument for conveying sound to a great distance."

In the case of the *Central Union Telephone Co.* v. *Bradbury*, 106 Ind. 1, the word "telephone," as used in the act of April 13th, 1885, was held to mean "an organized apparatus, or combination of instruments, usually in use in transmitting, as well as in receiving, telephonic messages." By the use of the telephone, persons are enabled to converse with each other while in their respective business houses or residences, a great distance apart. Although of recent date, it has become of important use in the transaction of business, and there is no other invention or device to supply its place. While it may not supply and take the place of the telegraph in many instances and for many purposes, yet in others it far surpasses it, and is and can be put to many uses for which the telegraph is unfitted, and by persons wholly unable to operate and use the telegraph. It has been held universally by the courts, considering its use and purpose, to be an instrument of commerce and a common carrier of news, the same as the telegraph, and by reason of being a common carrier, it is subject to proper obligations and to conduct its business in a manner conducive to the public benefit, and to be controlled by law. To conduct the business of the telephone by public telephone stations and by sending messengers to notify persons with whom a patron of the company desires to converse in other parts of the city, to compel the person desiring to converse with others to remain at the public tele-

phone station until the persons with whom they desire to converse can be notified and so arrange their business as to leave and go to another telephone station and hold the conversation, renders the use of the telephone almost worthless. It is by reason of the fact that business men can have them in their offices and residences, and, without leaving their homes or their places of business, call up another at a great distance with whom they have important business, and converse without the loss of valuable time on the part of either, that the telephone is particularly valuable as an instrument of commerce. It being an instrument of commerce, and persons or corporations engaged in the general telephone business being common carriers of news, what are the rights of the public, independent of the statute, as regards discrimination?

Any person or corporation engaged in telephone business, operating telephone lines, furnishing telephonic connections, facilities and service to business houses, persons and companies, and discriminating against any person or company, can be compelled by mandate, on the petition of such person or company discriminated against, to furnish to the petitioner a like service as furnished to others. This has been held in the cases of *State* v. *Nebraska Telephone Co.*, 17 Neb. 126; *Vincent* v. *Chicago, etc., R. R. Co.*, 49 Ill. 33; *People* v. *Manhattan Gas Light Co.*, 45 Barb. 136. And the principle held in these cases is in accordance with the well settled rules governing common carriers.

It is not controverted in the argument by counsel for the appellant that the Legislature had the right to regulate the price to be charged and collected for the use of telephones and telephonic connections, facilities and service; and even if it were controverted, it is well settled by authorities that the Legislature has the right to do so, relative to the business conducted within the State. *Hockett* v. *State*, 105 Ind. 250, and *Central U. Tel. Co.* v. *Bradbury, supra,* and authorities cited in those cases; *Johnson* v. *State*, 113 Ind. 143; *Munn* v.

*Illinois,* 94 U. S. 113; *Ouachita Packet Co.* v. *Aiken,* 121 U. S. 144; *Patterson* v. *Kentucky,* 97 U. S. 501.

The telephone company being liable for discriminating between persons and companies, and the person or company discriminated against having a remedy without the enactment of section 2 of the act of April 8th, 1885, there was no occasion for the statute on that account alone. Then what was the purpose and object of the two statutes set out?

It should be presumed the Legislature had some purpose and object. If section 2 of the act of April 8th was only to prevent discrimination, and section 1 of the act of April 13th only to fix the price for the rental of telephones when the telephone company was operating under a rental system, then all that the companies operating telephone lines would have to do would be to cease to operate their business under a rental system, and charge so much for each conversation; or, as they have done in this case, establish public telephone stations, and then charge for each separate use of the telephone, and they might thereby derive a greater income for the use of the telephone, and render to the public much inferior service, and yet avoid liability under the statute. We do not think such was the object or purpose of the statute, or that such construction can be placed upon it.

It was the evident intention of the Legislature that where a telephone company was doing a general telephone business in this State, any person within the local limits of its business in a town or city should have the right to demand and receive a telephone and telephonic connections, facilities and service, the best in use by such company, and should only be liable to be charged and to pay three dollars per month therefor. With this construction only are the statutes of any benefit to the citizens of the State. The Legislature fixed what, in the judgment of that body, was the maximum price that should be charged for the service, and placed it in the power of each individual, and gave him the right, to demand and receive such service within the limits of the company's

business, in any town or city where such company is doing a general telephone business.

It is insisted, as it appears by the answer that the lines of the appellant extended through the States of Ohio, Indiana and Illinois, that appellant was engaged in interstate commerce; that it was a common carrier of news between the States, and that therefore such statutes are an interference with interstate commerce. We can not agree with that theory. These statutes simply provide that telephone companies shall provide persons within this State with certain service, and for such service shall receive a certain compensation. They only seek to control the service within this State. If section 2 of the act of April 13th, providing for the price to be paid for connections between two cities or villages, should be construed to apply to two cities or villages, one of which was without this State, then there would be some question as to the validity of that section, or the power of the Legislature to control the price to be paid for a message or the use of the telephone for communicating with a person beyond the limits of the State; but that question is not involved in this case, as one section of a statute may be valid and another not. Telegraph companies stand upon a different footing, in some respects, from that of telephone companies; they have been granted some rights and privileges by acts of Congress which can not be abridged or interfered with. In the case of *Western U. Tel. Co. v. Pendleton*, 122 U. S. 347, referred to by counsel for appellant, it was held that the act was void in so far as it sought to govern the delivery of messages outside of the State. *State v. Newton*, 59 Ind. 173.

It is also contended by counsel for appellant that, as the statute provides a remedy other than that by mandate for a violation of the statute, the writ of mandate is not a proper remedy.

The right to have the telephone and telephonic connections

VOL. 118—14

and facilities is a right given by the statutes. It is a legal right, which may be enforced by mandate. No remedy is adequate which does not give the person that to which he is entitled by law; the penalty of one hundred dollars is cumulative, and does not abridge or take away the right to a writ of mandate. The statute itself provides that the act shall not be so construed as to " abridge the right of such aggrieved party to appeal to a court of equity to prevent such violations or discriminations, by injunction or otherwise." The statute should be so construed as that the penalty shall not take away any of the other remedies the aggrieved person may have, one of which remedies is by writ of mandate. This court held, in the case of *Central U. Tel. Co.* v. *Bradbury, supra,* that Bradbury was entitled to his remedy by writ of mandate compelling the company to furnish him with a telephone and telephonic service. The right to a writ of mandate requiring telephone companies to furnish telephonic service to persons entitled thereto has been held in *State* v. *Telephone Co.,* 36 Ohio St. 296, also by the Supreme Court of Pennsylvania, in *Bell Telephone Co.* v. *Commonwealth,* 3 Atlantic Rep. 825. In this case the complaint states a good cause of action under the statutes.

The second paragraph of the answer alleges the conducting of the defendant's business in the several States, and that it is engaged in interstate commerce, and that to furnish relatrix with an instrument and connections with its lines would put her in connection with its offices outside of the State and furnish her facilities for transmitting messages from Lafayette to various places in Ohio and Illinois, where the appellant has its wires and offices. This paragraph does not controvert the facts alleged in the complaint, that appellant, at the time of the acts and things complained of, etc., was owning and operating a system of telephone lines and wires and engaged in doing a general telephone business in the city of Lafayette, and that the place of business of the relatrix is within the limits of the appellant's telephone business in

said city; and it must also be remembered that the demand, as alleged in the complaint, was only that she be furnished with a telephone and telephonic connections and facilities necessary to place her, at her said store, in telephonic communication with patrons of appellant in said city. The statutes contemplate two kinds of service and different compensations for each : one, connections and facilities for conversing with patrons of the company within any city or town where an exchange is maintained ; the other, for conversing between two towns or cities.

The other paragraphs show the appellant to have been engaged in a general telephone business in said city, operating the same under a toll system at the time of the demand and tender by relatrix, and do not controvert the allegations in complaint that the plaintiff's place of business is within the local limits of appellant's business in said city. Neither of the paragraphs of answer is sufficient.

Under the construction we have given the statutes, there was no error committed by the court below in overruling the demurrer to the complaint, sustaining the demurrers to the answers or in granting the writ of mandate.

The judgment is affirmed, with costs.

Filed Jan. 22, 1889; petition for a rehearing overruled April 3, 1889.