The City of Rushville et al. v. The Rushville Natural Gas Company.

No. 16,002.

THE CITY OF RUSHVILLE ET AL. v. THE RUSHVILLE NATURAL GAS COMPANY.

132 575
135 51
132 575
146 660
132 575
155 668
155 669
132 575
0157 166
132 575
e164 165
e164 166
132 575
f169 381

MUNICIPAL CORPORATION.—*Ordinance.*— *Use of Streets.*—*Grant to a Particular Company.*—*License.*—An ordinance which specifically and by name grants to a company (in this instance a natural gas company) the right to use its streets, etc., for the purpose of laying its pipes, etc., simply grants a license or permission to the particular company to use the streets for the purpose designated, and does not grant a special and exclusive franchise to the company to occupy and use the streets of the city for said pupose.

SAME.—*Ordinance.*—*Taking Effect in Future.*—The fact that part of the provisions of an ordinance was not to take effect until a date designated in the future, would not affect either the validity of the entire ordinance nor of the particular provisions.

SAME.—*Natural Gas.*—*Maximum Rate to be Charged.*—*City May Prescribe.*—Under the act of March 7th, 1887 (Acts 1887, p. 36), municipal corporations have the authority to regulate the supply, distribution and consumption of natural gas, including the fixing of maximum rates to be charged therefor.

SAME.—*Act of March 7th, 1887 (Acts 1887, p. 36), Construed.*—*Scope of.*—*Title of Act.*—If the body of an act is ambiguous or doubtful, reference may be had to its title to aid in ascertaining the legislative intent. A reference to the title of the act above referred to shows that it was the purpose of the Legislature to empower a municipality with authority to do more than merely require the payment of a license fee by persons and corporations to whom it granted the privilege of using its streets and alleys for the distribution of natural gas therein. It was evidently the legislative purpose to confer upon the municipality the power to fix the maximum rate to be charged as a part of its power to regulate the supply, consumption and distribution of natural gas within its limits.

SAME.—*Maximum Rates.*—*Right to Fix by Subsequent Ordinance.*—*Reserved Power of City.*—Where the ordinance under which the plaintiff company was operating contained nothing whatever on the subject of rates, the city had the right to pass a subsequent ordinance fixing maximum rates to be charged consumers, which should apply as well to the plaintiff company as to others. The plaintiff company in accepting its franchise and in entering upon its work without exacting a stipulation reserving to itself the power to fix its own charges or otherwise contracting for a restraint of the powers of the city, acted in full view of the reserved power of the city, under the statute, to establish maximum charges by which it should be governed.

The City of Rushville *et al. v.* The Rushville Natural Gas Company.

SAME.—*Supplying Natural Gas a Public Work.*—*Delegation of Control Over to City.*—The work of supplying natural gas to cities is a public one, for which property may be appropriated under the right of eminent domain. Property thus employed is devoted to a public use, and is subject to control and regulation by the State, and the State may delegate such control in whole or in part to municipal corporations in so far as relates to property thus devoted to such use within their limits. The right of control thus possessed, and which may be so delegated, includes the power to fix reasonable maximum rates that may be charged by the holder of the franchise, unless the State or the municipality is restrained by some provision in the charter or grant of the license which amounts to a contract.

SAME.—*Furnishing Gas to all Consumers.*—*Ordinance May Require.*—A provision in an ordinance requiring any corporation, company, firm or individual accepting the provisions of the ordinance, to furnish gas to all consumers along the line of mains whenever applied for, is valid.

SAME.—*Filing of Bond.*—*Subsequent Ordinance Requiring.*—*Invalidity of as to Plaintiff Company.*—Where the plaintiff company received its franchise under an ordinance which did not require the filing of a bond on its part, it could not be required to file a bond (the execution of the bond was of itself made a full acceptance of the new ordinance, with all of its requirements) in compliance with a provision to that effect contained in a later ordinance.

SAME.—*Relief by Injunction.*—Where the employees in charge of the work of the plaintiff company were arrested, prosecuted and fined for the refusal of the company to file such bond, and further prosecutions were threatened if the refusal was persisted in, the plaintiff company had the right to go into a court of equity and have the enforcement of the bond provision of the later ordinance against it stayed by injunction.

COFFEY, J., dissents to so much of the opinion as holds that the statute therein set out confers the right to regulate the price at which natural gas shall be furnished.

From the Rush Circuit Court.

*A. B. Irwin,* for appellants.

*G. W. Campbell, B. L. Smith* and *C. Cambern,* for appellee.

McBRIDE, J.—The appellant, the city of Rushville, by ordinance, granted to the appellee, the Rushville Natural Gas Company, the right to use the streets, alleys and other public grounds of the city for the purpose of laying pipe and doing other necessary work in putting in a natural gas plant

to supply the inhabitants of the city with natural gas. The appellee accepted the franchise, entered upon the streets, alleys and public grounds of the city, sunk wells, dug trenches, purchased and laid pipes, and entered upon the business of supplying natural gas in accordance with the terms of the ordinance.

The appellee avers that it expended in this way the sum of $100,000; that it in all respects complied with the requirements of the ordinance in question, and had made contracts with citizens of the place to supply them with natural gas, for which they were to receive $18,000 per annum.

Afterward the city enacted another ordinance, fixing the conditions under which *any* corporation or person could use the streets, etc., for the introduction and supply of natural gas. The latter ordinance was much more specific in its terms than the other, and imposed additional conditions and restrictions upon those acting under it. It also prescribed penalties for its violation. The appellee insisted that the last ordinance could not be made to apply to it, and refused to accept it or to conform to its requirements, and especially to execute a bond required by its terms, and was, through its employees, proceeding under the old ordinance to lay pipes and furnish gas to its patrons. The employee in charge of its work was arrested, prosecuted and fined for so doing, and the appellee alleges that the officers of the city threatened to continue such prosecutions indefinitely unless they accepted the terms prescribed by the last ordinance.

This suit was brought to enjoin the city from the further enforcement of the new ordinance against the appellee, and the further maintenance of the system of prosecutions which had thus been commenced and were threatened.

The questions presented by the record, upon which the controversy mainly hinges, are these:

1st. Is the original ordinance valid?

2d. Is the new ordinance valid, or, if valid in part, is it

void in any of its material provisions which the appellant seeks to compel the appellee to accept before allowing it to proceed with its business?

3d. Assuming both ordinances to be valid, did the appellee, by its acceptance of the old ordinance, and its subsequent action thereunder, acquire substantial rights which would be violated by the enforcement of the new ordinance against it?

Incidentally, several other questions arise, which will be noticed hereafter.

The appellant insists that the old ordinance is void, for the reason that it attempts to grant a special and exclusive franchise to the appellee to occupy and use the streets of the city for the purpose of supplying natural gas to the city and its inhabitants. If the fact is as claimed, the appellant is unquestionably right as to the law. It is not in the power of the city to grant an exclusive franchise of that character and give to any person or corporation a monopoly of its streets. *Citizens' Gas, etc., Co.* v. *Town of Elwood*, 114 Ind. 332; *Crowder* v. *Town of Sullivan*, 128 Ind. 486. The ordinance here in question, however, is not open to this objection. It does not give, or purport or attempt to give, any exclusive right to the appellee. The only basis for the contention of the appellant is that the ordinance specifically, and by name, grants to the appellee the right to use its streets, etc., for the purpose of laying its pipes, etc. This is a mere license, or permission to, this particular company to use the streets for the given purpose. That such a license is not exclusive and does not grant a monopoly is well settled. This question was so fully considered in the recent case of *Crowder* v. *Town of Sullivan*, *supra*, that it is unnecessary to consider it further. No other objection has been urged to the validity of the ordinance and we know of none. We regard it as valid.

The only objection to the validity of the second, or as it is styled by counsel, the " new " ordinance, as an entirety is, that as to a part of its provisions it does not take effect until

December 1st, 1892. The case of *Hendrickson* v. *Hendrickson*, 7 Ind. 13, is cited as sustaining this contention. In that case the question was not as to the validity of a statute but as to when it took effect. The Constitution of the State, section 28, article 4, provides that : " No act shall take effect until the same shall have been published and circulated in the several counties of this State by authority, except in case of emergency, which emergency shall be declared in the preamble or in the body of the law." The Legislature passed an act declaring in the body of the act that it should take effect and be in force from and after August 1st, 1852. There was no emergency declared, and the act was not published and circulated until May 6th, 1853. The court held that the act was not in force until May 6th, 1853. This case does not sustain the contention of the appellee. If the act in question had contained an emergency clause it would undoubtedly have taken effect at the time named in the act. As it was, it took effect and became a valid and effective law when published and circulated as required by the Constitution. The rule relative to municipal ordinances is thus stated by Judge DILLON: " Municipal ordinances, otherwise valid, may, like an act of the Legislature, be adopted to take effect in the future and upon the happening of a contingent event." Dillon Munic. Corp., section 309. See, also, Sutherland Stat. Con. 107, and authorities cited.

The fact that certain provisions of the ordinance are not to take effect until December 1st, 1892, does not affect either the validity of the entire ordinance nor of the particular provisions.

Objection is made to the validity of several specific provisions of the ordinance.

The second section provides that " Before any corporation, firm, individual or company desiring to pipe the city of Rushville for the supply of natural gas shall do any work toward laying any mains or pipes in any street," etc., of the city, they shall execute a bond with sureties in the penal sum of

$5,000, conditioned for the performance of certain acts. Section 12 of the ordinance provides that the filing of such bond shall constitute a full and complete acceptance of the provisions and conditions of the ordinance as soon as such bond is approved by the mayor and filed by him in the office of the city clerk. It is insisted by the appellee that it was not in the power of the city to exact the filing of such bond in any case, and especially that as to it the bond could not be required. For reasons which will hereafter appear, we do not deem it necessary to consider the power of a municipal corporation to require, as a condition of granting a franchise of this character, the execution of a bond, with surety, to restore the streets, when pipes are laid, to their original condition, or to maintain them in that condition for any given time, which was the general character of the bond required in this case.

Section 10 prescribes certain maximum rates which may be charged to consumers after December 1st, 1892, and forbids the charging of any higher rates after said time. It is averred in the complaint that the appellee has a large number of contracts with consumers based upon schedules of prices higher than those fixed by the ordinance, the total amounts aggregating $18,000, said contracts being for the term of three years, and all to take effect in the month of November, 1889. As these contracts will all expire before the schedule of prices fixed by the ordinance will take effect, there is no question of interference with contracts already made between the appellee and consumers.

The appellee, however, denies the power of the city to fix rates at all, and further, that even if such power exists it can not be exercised as against the appellee.

The act of March 7th, 1887, Acts 1887, page 36, Elliott's Supplement, section 800, contains the following: "The boards of trustees of towns, and the common councils of cities in this State, shall have power to provide by ordinance, reasonable regulations for the safe supply, distribution and

consumption of natural gas within the respective limits of such towns and cities." * * *

The appellant insists that the statute furnishes ample authority to municipalities to regulate the supply, distribution and consumption of natural gas, including the fixing of maximum rates to be charged therefor, while the appellee contends that the only regulations authorized by it are such as conduce to safety; that the corporation can only make regulations providing for its *safe* supply, *safe* distribution and *safe* consumption.

If the appellee is right in its interpretation of this statute, the Legislature by its enactment conferred upon municipal corporations no power whatever except the power to exact a license fee from persons or companies to whom franchises are granted. Independently of any statutory authority, municipal corporations possess, among their implied and inherent police powers, ample authority to impose upon corporations, or natural persons licensed by them to exercise any powers within the corporate limits, all reasonable regulations necessary to provide for the safety of their inhabitants. *First Nat'l Bank* v. *Sarlls,* 129 Ind. 201; *City of Crawfordsville* v. *Braden,* 130 Ind. 149; *Clark* v. *City of South Bend,* 85 Ind. 276.

If the regulations which the statute purports to authorize such corporations to make are limited to such as conduce to the safety of their inhabitants, it is, therefore, as to such matters merely declaratory of such inherent powers and a work of supererogation.

It will never be presumed that the Legislature in the enactment of a given law has done a vain thing, and it is presumed that it intends its acts and every part of them to be valid and capable of being carried into effect. Sutherland Statutory Construction, section 331.

It is presumed also that " the Legislature is acquainted with the law, and that it has a knowledge of the state of it upon

the subjects upon which it legislates." Sutherland Statutory Construction, section 333.

It must be conceded that the language used in the statute is somewhat ambiguous. In our opinion, however, the construction contended for by the appellee is incorrect, and that the intention of the Legislature was to confer upon the municipal authorities full power to regulate the supply, distribution and consumption of natural gas.

We are aided in reaching this conclusion by referring to the title of the act, which reads as follows: "An act empowering cities and towns within the State of Indiana to regulate the supply, consumption and distribution of natural gas therein, and declaring an emergency." It will be observed that the word "safe" does not occur in the title. It is well settled that if the body of an act is ambiguous or doubtful reference may be had to its title to aid in ascertaining the legislative intent. Sutherland Statutory Construction, sections 210, 211. *Garrigus* v. *Board, etc.,* 39 Ind. 66 ; *Smith* v. *State,* 28 Ind. 321 ; *United States* v. *Palmer,* 3 Wheaton, 610 ; *Burgett* v. *Burgett,* 1 Ohio, 469.

Sutherland says: "If the meaning is doubtful, the title, if expressive, may have the effect to resolve the doubts by extension of the purview, or by restraining it, or to correct an obvious error; for in ascertaining the intention nothing is to be rejected from which aid can be derived ; therefore, the title of an act may claim a degree of notice, and is entitled to its share of consideration." Section 210.

"The title of an act is now so associated with it in the process of legislation that when, in performing its constitutional functions, it affords means of determining the legislative intent, in cases of doubt its help can not be rejected for being extrinsic and extra legislative. The language of an act should be construed in view of its title and its lawful purposes." Section 211.

Assuming appellee's construction to be correct, the title is misleading, and does not express the subject of the act. If

that construction is correct, the title should read, "An act empowering cities and towns within the State of Indiana to require the payment of a license fee by persons and corporations to whom is granted the privilege of using the streets and alleys of such cities and towns for the distribution of natural gas therein," that being, according to that interpretation, the only power actually conferred by the act. We can not think that it was the purpose of the Legislature to leave municipal corporations absolutely without power of control or regulation over the holders of such franchises except as they may be able to reach and control them in the exercise of their implied police powers. To give to the statute such construction would be to say that after such franchises have been acquired, no matter what conduct their holders may be guilty of tending to the discomfort or inconvenience of the citizen, and no matter how extortionate they may be, unless their acts tend to endanger safety, or otherwise come within the purview of the inherent police powers of the municipality, there is no remedy, as the Legislature has left them independent of municipal supervision.

It may be said that the dangers of an abuse of power are not confined to the one side, and that municipal corporations having, by the granting of franchises not containing any limitation upon the power to charge such rates as they may see fit, induced persons to invest their money in such enterprises, they should not be allowed to afterward dictate the terms upon which, and prices for which, the public shall be served.

There is, of course, in such cases, more or less danger of oppression and injustice. This involves a question of legislative policy with which the courts can not interfere. There is, however, a clear distinction between the two cases. The officers of the municipality represent the public, and are presumably acting for the public good, while the holders of the franchise represent simply their private interests; and while they have devoted their property to public use, they are, presumably, by such use seeking their personal and private gain.

If there should be, in a given case, a clear case of oppression and abuse of power by the municipal authorities, the courts might afford relief, but it is for the Legislature alone to delegate authority and limit the extent to which regulation shall be carried, subject to the limitation, that under the guise of regulation property may not be confiscated, or its owner deprived of its use without compensation, and without due process of law.

It is too well settled to be longer the subject of controversy, that where the owner of property devotes it to a use in which the public have an interest, he must, to the extent of the interest thus acquired by the public, submit to the control of such property by the public for the common good. *Munn* v. *Illinois*, 94 U. S. 113; *City of Zanesville* v. *Zanesville Gas Co.*, 23 N. E. Rep. 55; *Hockett* v. *State*, 105 Ind. 250.

Indeed, so firmly is this established, and by authorities so numerous, that it is hardly necessary to cite.

The work of supplying natural gas to cities is a public one, for which property may be appropriated under the right of eminent domain. *Kincaid* v. *Indianapolis, etc., Co.*, 124 Ind. 577, and authorities cited.

Property thus employed is devoted to a public use, and is subject to regulation and control by the State, and the State may delegate such control in whole or in part to municipal corporations in so far as relates to property thus devoted to such use within their limits. The right of control thus possessed, and which may be so delegated, includes the power to fix reasonable maximum rates that may be charged by the holder of the franchise, unless the State or the municipality are restrained by some provision in the charter, or grant of the license, which amounts to a contract. *Munn* v. *Illinois, supra; Peik* v. *Chicago, etc., R. W. Co.*, 94 U. S. 164.

The delegation of power by the Legislature in this case, covering as it does the entire ground of the supply, distribution and consumption of natural gas, in our opinion car-

ries with it and includes the power to exercise a reasonable control over the price which may be charged to consumers. The old ordinance contained nothing whatever on the subject of rates, and we see no reason why the city should be restrained from the enactment and enforcement against appellee as well as all others of reasonable regulations fixing maximum rates which might be charged consumers. The Supreme Court of Ohio, in the recent case of *City of Zanesville* v. *Zanesville Gas Light Co.*, 23 N. E. R. 55, applied the principle of *Munn* v. *Illinois, supra,* to the case of a company engaged in manufacturing and supplying artificial gas to the inhabitants of the city of Zanesville. The court says: "Because, prior to any legislation on the subject, it may have possessed the common law right of fixing its own prices, it does not place it beyond the reach of any legislative control on the subject, whenever, in the interest of the public good, it becomes necessary that such control should be had." .

The appellee in accepting its franchise, and in entering upon its work without exacting a stipulation reserving to itself the power to fix its own charges, or otherwise contracting for a restraint of the powers of the city, acted in full view of the reserved power of the city, under the statute, to regulate and establish maximum charges by which it should be governed.

We think that provision in the ordinance is valid and binding upon the appellee.

Section 11 of the new ordinance is as follows: "Any corporation, company, firm or individual accepting the provisions of this ordinance, shall be compelled to furnish gas to all consumers along his or their line of mains whenever applied for."

This the appellee insists is invalid, and that such compulsory service can not be exacted. There is some conflict in the courts over this question, but that which we regard as the true rule is laid down in the case of *Williams* v. *Mutual Gas*

*Co.*, 52 Mich. 499 (50 Am. Rep. 266), where it is held that a gas company is bound to supply all individuals along its lines requiring it, on payment or reasonable security. In that case there does not seem to have been any ordinance requiring compulsory service, but the gas company refused on demand to furnish gas to a would-be consumer unless he would first deposit with them $100. On the hearing the company contended that it was under no legal duty or obligation to supply any citizen of Detroit with gas. The court said: " The defendant is a corporation, in the enjoyment of certain rights and privileges under the statutes of the State, and charter and by-laws of the city, and derived therefrom. These rights and privileges were granted that corresponding duties and benefits might enure to the citizens when the rights and privileges conferred should be exercised. The benefits are the compensation for the rights conferred and privileges granted, and are more in the nature of convenience than necessity, and the duty of this corporation imposed can not therefore be well likened to that of the inn-keeper or common carrier, but more nearly approximates that of the telegraph, telephone or mill-owner." See *Telephone Co.* v. *Bradbury*, 106 Ind. 1 ; *Central Union Tel. Co.* v. *State*, 118 Ind. 194.

We regard the section in question as valid, and within the power of the city to impose upon the appellee.

The ordinance is long, and contains many provisions, the validity of which have not been questioned in argument or considered by us. This opinion can not of course be considered as an adjudication of the validity of any of its provisions not discussed and passed upon herein.

Reference has heretofore been made to the bond required by section 2 of the ordinance. The section is long and sets out at length the several conditions of the required bond. No good purpose would be subserved by adding to the length of this opinion by copying, or even abstracting them. It is sufficient to say that many and onerous duties are im-

posed upon the obligors.  No similar bond was required by the old ordinance, but by the terms of the new ordinance the appellee is denied the right of carrying on the work of laying pipe, making connections with mains, or otherwise discharging its obligations to its patrons, without first executing the bond.  The execution of the bond is also made of itself a full acceptance of the new ordinance with all of its requirements.  Whatever the right or the power of the city may be to exact the execution of such a bond as a condition of the granting of a franchise of this character (about which we express no opinion), it is clear that it was not in its power to exact it of the appellee after it had accepted and acted under the provisions of the old ordinance.  Section 2 of the new ordinance is, therefore, inoperative in so far as the appellee is concerned.

The prosecutions complained of grow out of the refusal of the appellee to comply with that section by executing the bond and thus signify its acceptance of that ordinance, and should not have been commenced or maintained.

The appellant contends, however, that even if this is true the appellee was not entitled to relief by injunction.  This question has been decided adversely to the appellant in the recent case of *Davis* v. *Fasig*, 128 Ind. 271.

It was there held, following numerous authorities, that a court of equity may enjoin the enforcement of a city ordinance to prevent a multiplicity of actions, the ordinance being void as to the appellees in a most material provision, which absolutely denied to it substantial rights except on condition that it submit to unjust restrictions, it had the right to go into a court of equity and have its enforcement stayed by injunction.  We find no error in the record, and the judgment is affirmed.

MILLER, J., took no part in the decision of this case.

Filed Oct. 31, 1891; petition for a rehearing overruled April 28, 1892.

## DISSENTING OPINION.

COFFEY, C. J.—I regret my inability to concur with my brethren in so much of the opinion in this case as holds that the statute therein set out confers the right to regulate the price at which natural gas shall be furnished.

This statute confers upon the boards of trustees of towns and the common councils of cities the power to regulate the safe supply, the safe distribution, and safe consumption of natural gas, but this does not, in my opinion, include the right to regulate the price at which it shall be sold.

Filed Oct. 31, 1891.