STATE OF MISSOURI ex rel. O. E. PAYNE et al., Appellants, v. THE KINLOCH TELEPHONE COMPANY, Respondent.

### St. Louis Court of Appeals, March 18, 1902.

1. Telephone Companies: COMMON CARRIERS. Telephone companies are common carriers in the sense that they are bound to furnish service to any one offering to comply with their reasonable requirements, not only in respect to their public stations system, but also as to the so-called private system of instruments installed in offices, residences and places of business.

2. ———: JURISDICTION OF COURTS OVER TELEPHONE COMPANIES. Telephone companies are regarded by the courts as performing functions similar to those of railways, steamboat and express companies, which conduct a general carrying business, and are subject to governmental supervision and regulation, and judicial decisions.

3. ———. In the case at bar, the respondent telephone company is plainly amenable to regulation if it acts arbitrarily and unconscionably against a citizen, for it may exercise eminent domain and has dedicated its property to the use of the public.

4. **Telephone Company:** RULES ARE N ' BINDING ON PARTIES, UNLESS NOTICE IS GIVEN OF / M. A rule or regulation in a proper sense (if it is neithe/ .w of the land binding on every one, nor a judicial order bi' ᵤ on some designated person), in order to affect the rights of/ ties in their dealings and relations, must be known to them and either expressly or impliedly assented to as a part of the particular contract, or transaction in reference to which it is invoked.

5. ———: ———. In the case at bar, the appellant was not notified at the time he contracted to have a telephone placed in his house, that it was customary on the part of respondent to require pay for back service before restoring a telephone, which had failed to perform the required service, and the rule was not binding on appellant, and the writ of mandamus should issue to respondent to restore the telephone to appellant and allow him the use of the same.

6. ———: MAY BE COMPELLED BY MANDAMUS TO GIVE SERVICE TO CUSTOMER. If a telephone company, bound to serve the community, seeks to withdraw service from a customer on account of defaulted payments or other omission to comply with his contract, the case must be inquired into, and if it is apparent that no good cause exists for the withdrawal and that the company will not be harmed by compelling it to continue to supply the customer, it should be compelled by mandamus to do so.

Appeal from St. Louis City Circuit Court.—*Hon. William Zachritz*, Judge.

REVERSED AND REMANDED *(with directions)*.

*D. D. Holmes* for appellants.

(1) The defendant is a common carrier as to its private 'phones as well as to its public 'phones and is governed by the law applicable to common carriers and is bound to serve all alike without discrimination. State ex rel. Tel. Co. v. Tel. Co., 23 Fed. Rep. 539; State ex rel. Cable Co. v. Telegraph

& Telephone Co., 47 Fed. Rep. 633; State ex rel. Falley, 118 Ind. 194; "Webster Telephone Case," State ex rel. v. Tel. Co., 17 Neb. 126; Sec. 1255, R. S. 1899; State v. Tel. Co., 36 Ohio St. 296; Tel. Co. v. Tel. Co., 66 Md. 399. (2) The relation of defendant to the subscribers to its private 'phones does not depend on contract, but rather on a public duty that is incumbent on every common carrier to serve the public impartially. Smith v. G. & S. Co., 42 Hun 454; Tel. Co. v. The State ex rel., 123 Ind. 113. (3) Common carriers can not refuse to render service because of a disputed claim for services previously rendered. Hence, the alleged rule contended for by defendant that all pre-existing claims must be paid before installation of a 'phone is illegal, and the court erred in permitting an inquiry into matters pertaining to the former contract, such matters being wholly irrelevant to the issues in this case. But even if such claim would be a good defense, defendant failed wholly to establish the alleged claim and failed to establish the existence of said rule. Smith v. G. & S. Co., 42 Hun 454; 1 Blackstone's Com., * 91; Webster Telephone Case, 17 Neb. 126; State v. Railroad, 48 N. J. Law, 55; Spelling on Extraordinary Relief, p. 1304, par. 1593.

*Geo. W. Easley,* with *Boyle, Priest & Lehmann* for respondent.

(1) This proceeding is an action at law, and, in no sense, a proceeding in equity. Mandamus "has been recognized and incorporated in the State Constitutions generally along with other established common-law remedies." 2 Spell. Extr. Rel., sec. 1362. Writs of mandamus, originally issued from the king's bench, and are designated by Mr. Blackstone as one of the flowers of that court. In all modern times the writ issues exclusively from common-law courts. High's Extr. Legal Remedies (2 Ed.), sec. 1; State ex rel. v. Lewis, 76 Mo. 370. So much is it an action at law in this State that

our statutes contemplate jury trials in mandamus proceedings. R. S. 1899, sec. 4306. (2) Notwithstanding the writ of mandamus yet retains much of its former prerogative form, it is subject to the provisions of the code relating to appeals, and bond in such cases operates as a supersedeas. State ex rel. v. Klein, 137 Mo. 673. (3) Indeed, the proceedings must be governed by all provisions of the code that are applicable to this writ. The appellants did not request a finding by the court below, either upon conclusions of fact or law "with the view of excepting to the decision of the court upon the questions of law . . . arising in the case." Upon such a request, the court below would have stated, in writing, its conclusions of fact found separately from its conclusions of law. R. S. 1899, sec. 695. Having failed to request such written findings of fact and conclusions of law, the appellants are concluded by the finding in favor of respondent on all questions of fact arising in the case necessary to support the general finding in favor of respondent, and such questions of fact are not open to review in this court. Cochran v. Thomas, 131 Mo. 268; Seifer v. City of St. Louis, 141 Mo. 592; Sutter v. Boeder, 149 Mo. 307. (4) The ruling under the analogous Federal statute is that the general finding concludes as to both law and fact found, and can not be reviewed by appellate courts except as to specific questions of law presented by the record. The rule under the Federal statute is thus condensed by Mr. Justice MILLER: "1. If the verdict be a general verdict, only such rulings of the court in the progress of the trial can be reviewed as are presented by the bill of exceptions, or as may arise on the pleadings. 2. In such cases a bill of exceptions can not be used to bring up the whole testimony for review, any more than in a trial by jury. 3. That if the parties desire a review of the law involved in the case, they must either get the court to find a special verdict, which raises the legal proposition, or they must present to the court their propositions of law and require the

court to rule upon them." Norris v. Jackson, 76 U. S. (9 Wall.) 128. (5) There can be no doubt that the respondent had the right to put in force all reasonable rules and regulations for the transaction of its business. The existence of a rule requiring the payment of past due rents and the cost of reinstalling the telephone, if taken out for the non-payment of rent, is conclusively established in this case, not only by the evidence but by the finding of the court below. If the appellants were entitled to any reduction on account of alleged bad service, the respondent met that in a state of fairness when its officer offered to waive the cost of the reinstallation of the telephone, which was declined by the appellants. The contention of the appellants that the respondent must sue at law for the past due rents is well met by the following expression from the court of appeals of this State: "We do not take the view pressed upon us by counsel for the plaintiffs that if the plaintiffs do not see fit to pay this excessive charge, the only remedy of the defendants is an action at law to recover the same. The slightest reflection will show that a water company could not do business if its only remedy for the waste of its water by its consumers consisted in actions at law against them severally. This would lead to an almost infinity of actions to collect small bills against scattered consumers, many of them mere renters and insolvent." McDaniel v. Springfield Waterworks Co., 48 Mo. App. 480.

GOODE, J.—An alternative writ of mandamus was issued at the instance of appellants, commanding the respondent to rent to the appellants a telephone instrument and place the same, together with the usual appurtenances in their building, connect it with the wires of the respondent's telephone system, and so maintain it as to afford the plaintiffs the customary facilities for receiving and transmitting messages over the wires

Vol 93, app—23.

of the respondent throughout the city of St. Louis, or show cause to the contrary.

Appellants constitute a co-partnership doing business under the style, f the Keystone View Company. The respondent, the Kin. Telephone Company, is a corporation organized under the ⁄s of this State, and is engaged in operating a telephone system in the city of St. Louis for the transmission of news and messages for hire between its customers within said city by means of the apparatus and appliances pertaining to such a system.

According to its return, it operates two systems; one consisting of instruments located in public places like hotels or drugstores, which any person may use at any time for a small toll, and the other a system of private instruments placed in the offices or buildings of subscribers under special contracts and under just and reasonable rules governing their use.

By its answer respondent contends that it is a common carrier in respect to the first or public system; but that as to the other, it is not a common carrier and is only bound to serve persons with whom it contracts on terms, conditions and regulations made by the respondent.

In March, 1900, the following contract was made by the parties under which appellants subscribed for an instrument to be placed in their business quarters:

"St. Louis, Mo., March 7, 1900.

"We hereby agree to rent of the Kinloch Telephone Company at our place of business, No. 3443 Laclede avenue, one telephone on copper wire metallic circuit, for the period of five years, upon the following terms and conditions:

"1.   To pay $60 per annum, in quarterly payments, said payments to be made in advance.

"2.   We agree to use said telephone as long as we require the use of a telephone, not to exceed five years.

"3. `The time of the beginning of the term to date from the installation of the instrument.

"4. The telephone furnished to be and remain the property of the Kinloch Telephone Company, which company shall have authority to remove the same for non-payment of the rental, after reasonable notice.

"KEYSTONE VIEW COMPANY,

"Per M. I. PAYNE, Pres."

Appellants paid the hire of the telephone for which they subscribed until the first day of October, 1900, it seems, or two quarters. It worked badly and messages could not be received or transmitted over it satisfactorily. Appellants complained of defects from time to time, and attempts were made to put it in good working order, but without success until about the fifteenth day of December. In the meantime appellants became so dissatisfied with the appliance and tired of waiting for it to be adjusted properly, that they notified the respondent on the thirty-first day of August, that is, a month before the expiration of the time for which they had paid, to remove it. Respondent disregarded several notices of this kind and on the fifteenth day of December the instrument was finally adjusted so that it rendered good service and the appellants were willing and desired to retain the use of it and so notified the respondent, tendering them, on the third day of January, the sum of fifteen dollars for the quarter next ensuing and offering to pay them five dollars for the service during the time the instrument had been efficient prior to said date. Respondent demanded pay for the entire time the instrument had been in appellant's house, regardless of whether it worked or not; that is, insisted on being paid for the time from October first to December fifteenth, though there was no evidence tending to prove the telephone was of any use to the appellants during that interval. In spite of said tender and appellants' notification that they wished to

retain the instrument after it became efficient, respondent removed it on the fourth day of January, 1901, and has since that time refused to restore it unless paid for all the time it was in the building at the usual rates.

The claim is put forward that one rule of the company is not to reinstate a telephone which has been removed for non-payment of rent until all back payments have been made and the costs of reinstallation, amounting to seventeen dollars, also paid in advance, although the latter item was waived by the manager or superintendent of the company in this instance.

The alleged rule in regard to when an instrument will be restored to a subscriber or reinstalled on his premises, is not among any of the printed rules of the company furnished to subscribers, nor is it in the form of a printed rule at all, nor was it communicated to appellants when they made the contract with the respondent, or ever communicated to them until they demanded a continuance of service by the respondent.

The facts in this case are undisputed, the precise issue being whether or not the respondent is bound to install a telephone on the appellants' premises on their demand and tender of one quarter's rent in advance, plus the unpaid rent for the time they enjoyed good service by the other telephone, and whether, if there is an obligation of that kind on the respondent, it may be enforced by this remedy? Such a controversy might often turn somewhat on the regulations of the telephone company, its contracts with customers and the behavior of the latter while using the telephone system. But aside from the special circumstances that may arise in any case, a larger question is raised by the return to the alternative writ of mandamus in the present one, namely: whether the respondent, or any other telephone company, sustains such a relation to the citizens of the territory in which it operates its system, that it is bound to enter into a contract with a citi-

zen to furnish him telephonic facilities when requested and the request accompanied with an offer to pay the usual charge in advance ?

Notwithstanding the recency of the use of telephone communication as an aid to the transaction of social and commercial affairs, that use has increased with so much rapidity and has become so widespread, that this question has been already presented to and passed on by the courts several times, and passed on, too, without much doubt or difficulty; for the principle involved and to be applied to the solution of the question was well settled. Telephone companies have been held from the first to be common carriers in the sense that they are bound to furnish service to any one offering to comply with their reasonable requirements, not only in respect to their public station system, but also as to the so-called private system of instruments installed in offices, residences and places of business. State ex rel. B. & O. Tel. Co. v. Bell Tel. Co., 23 Fed. Rep. 539; State ex rel. Tel. Co. v. Delaware. & A. Telegraph & Telephone Co., 47 Fed. Rep. 633; State v. Telephone Co., 36 Ohio St. 296; Chesapeake, etc., Tel. Co. v. B. & O. Tel. Co., 66 Md. 399; Bell Tel. Co. v. Com'th ex rel. B. & O. Tel. Co., 3 Cent. Rep. 907; Hockell v. State, 105 Ind. 250; Cent. Union Tel. Co. v. Bradbury, 106 Ind. 1; Cent. Union Tel. Co. v. State ex rel. Falley, 118 Ind. 194; Cent. Union Tel. Co. v. State ex rel. Hopper, 123 Ind. 113; Bell Tel. Co. v. Comm'th, 3 Atlantic 825; Telegraph Co. v. Telephone Co., 18 Atlantic 1071; State ex rel. American Union Tel. Co. v. Tel. Co., 22 Albany Law Jour. 283; State ex rel. Webster v. Nebraska Tel. Co., 17 Neb. 126.

In the cases above named the duty of an incorporated company, operating a telephone system in a certain locality, to treat all citizens of that locality alike and to give them all equal privileges in regard to the use of the system by entering into contracts with them, and installing instruments on their premises, is recognized and upheld, as well as the power of

the courts to compel the observance of this duty by a writ of mandamus. Some of the decisions are founded on statutes more or less positively prescribing the duty, and others on the common-law rule that a common carrier, or other person or company holding itself out as ready to serve the public at large in some business intimately and essentially associated with the general social and business life of the community (especially if such person or company is operating under or enjoys some advantages or franchise from the State), is bound to serve every member of the community without discrimination or partiality; and some of the decisions which are supported by a statute, declare the power to enforce the obligation would exist if there was no statute, by virtue of the principles of the common law, of which the statute is said to be declaratory. Central Union Tel. Co. v. Bradbury, supra. The duty thus imposed on telephone companies is in no sense novel, nor did its application to them involve a new principle; for their business plainly falls, by its very nature, within the class of quasi-public employments as to which the courts have never hesitated to restrict in some measure the right of contract, for the common welfare and upon considerations of public policy. Telegraph and telephone companies are regarded by the courts as performing functions similar to those of railways, steamboats and express companies, which conduct a general carrying business and have always been subject to governmental supervision and regulation, exercised both by legislation and judicial decisions. Vincent v. Railroad, 49 Ill. 33; Buffalo, etc., R'y Co. v. Buffalo St. R. R. Co., 111 N. Y. 132. Indeed, the same abridgment of the right of contract is applied to other persons or corporations than carriers, if engaged in employments of a public character, such as innkeepers, warehousemen, mills, bakers, gas and water companies and perhaps still others. Mumm v. Illinois, 94 U. S. 113; People v. Budd, 117 N. Y. 1; 143 U. S. 517; Waterworks Co. v. State, 46 Neb. 194; 30 L. R. A. 447; Smith v. Tel. Co., 42 Hun (N. Y.) 454; State ex rel. v. Joplin Waterworks Co., 52

Neb. 312; Shepard v. Gaslight Co., 6 Wis. 539; People v. Gaslight Co., 45 Barb. 137; Waterworks v. Schottler, 110 U. S. 347; Brass v. Stoeser, 153 U. S. 391; May v. Yuille, 3 Ala. 137; 36 Am. Dec. 441. Most of such cases deal with the constitutionality of statutes passed to regulate and control the conduct of certain employments; others were interferences by the courts by writs of injunction and mandamus. It is impossible to extract from them any one principle which will explain and support all the decisions in which the circumstances were held to warrant a restraint on a defendant's right to conduct his business as he pleased, or every one in which they were held insufficient and relief denied. Ponderous reflections on the opposed political theories of liberty and paternalism, with which they abound, serve often, only to disclose the intellectual bias of the judge who wrote the opinion, while constructions of constitutional powers and limitations have produced haphazard and contradictory results, depending more on whether the deciding tribunal deemed the regulating statute reasonable and wholesome, or meddlesome and mischievous, than on its clear violation of a constitutional inhibition. In fact, our fundamental principles are not threatened or questioned in any of these curtailments by courts or legislatures of unhampered individual action, because they are made to subserve rather than destroy free contractual rights, since they commonly are directed against extortionate or arbitrary conduct by persons, corporations or combinations, either possessing or thought to possess some monopoly or other advantage enabling them to dictate terms. That is the motive of enactments and the reason of decisions of this character, and the vital question seems to be, always, whether any particular interference is justified by the existence of a condition which precludes the members of a community from negotiating for fair terms, or forces them to dispense altogether with the service rendered by the party complained of (although their welfare imperatively requires that service) unless relieved by

the interposition of the public authorities. Abuses of the contract right must now and then be corrected and they will require correction more frequently as population grows dense and commercial activities multiply.

The right to interfere by statute or judgment is placed on several grounds; first, the bestowal by the State of some extraordinary franchise, or attribute, under which the party to be restrained is operating, as in the case of railway and other companies enjoying the right of eminent domain; second, the possession of a legal monopoly, either directly granted by the State or developed from a privilege granted by it, like licensed State lotteries and railway pools; third, possession of a virtual monopoly on account of the nature of the business, like the warehouses whose charges were held to be subject to regulation by government in People v. Budd, supra; or fourth, simply because the business is one which closely concerns the public welfare, like inns or grain elevators, as in Brass v. Stoeser, supra.

An examination of the decisions shows that the right to curtail freedom of contract by compulsory measures on the part of the sovereignty through any of its branches, is not exclusively nor always exercised in either of those instances— neither where the party restrained is the donee of a valuable franchise, nor where a monopoly, legal or actual, exists, nor where the party against whom relief is invoked operates a business of great magnitude and heavily influencing the prosperity of the community; yet at the same time has been exercised in all such cases. In other words, the ground of this public interference with business affairs is not well settled; but the underlying principle is the right of the people, acting through their legislative representatives or their courts for the good of the commonwealth, to set bounds to the arbitrary conduct of a natural or corporate person or combination of either, whenever that conduct becomes intolerably oppressive and mischievous; while at the same time, conceding to every-

body the prerogative to make such contracts and enter into relations with such persons as he chooses, inside those bounds. In this State the rule has been declared that the magnitude of a business is not cause for compelling its proprietor to assume relations with or serve a citizen against his will; in other words, to direct or control the proprietor; but that relief of that kind can be afforded only against parties whom the State has enabled to obtain a monopoly or put in a position to oppress their fellow-citizens by the donation of a special privilege, or where the business is quasi public, or the property used in conducting it has been dedicated to public use; and thus it was held in State ex rel. Star Pub. Co. v. Associated Press, 159 Mo. 410. But that authority distinctly recognizes the doctrine that a corporation, endowed with the power of eminent domain or engaged in a public avocation, may be regulated and controlled in reasonable limits; so the respondent telephone company is plainly amenable to regulation if it acts arbitrarily and unconscionably against a citizen; for it may exercise eminent domain and had dedicated its property to the use of the public.

Respondent's justification for refusing to hire appellants a telephone and the use of its wires and current must then be found, if at all, in the special circumstances of this case, and in truth we understand that is its serious contention; rather than that it may permit or not at its pleasure the use of its so-called private system of instruments, for in its brief we find this statement:

"Here, the question is not whether the appellants shall be served, but whether they shall be served without compliance with and in defiance of respondent's reasonable rules and regulations ?"

Two complete answers may be made to the question thus propounded: First, no rule or regulation of the company is shown to have been defied or violated by the appellants. The alleged rule that an instrument once taken out for non-pay-

ment of rent would not be reinstalled until back rent was paid, was not mentioned in the contract between these parties, it was not among the company's printed rules, and the appellants were never apprised of its existence until they asked the company's superintendent for renewed service. It is nonsense to term such an exaction a rule.

A rule or regulation in a proper sense (if it is neither a law of the land binding on every one, nor a judicial order binding on some designated person), in order to affect the rights of parties in their dealings and relations, must be known to them and either expressly or impliedly assented to as a part of the particular contract or transaction in reference to which it is invoked.

If this alleged regulation had been communicated to these appellants when they made the contract with the respondent, they might have been held bound by it, if just. But merely notifying them afterwards that it was customary to require pay for back service before restoring a telephone, was nothing more or less than a term or condition prescribed by the respondent on compliance with which they would serve the appellants—no rule at all. That requirement or exaction was rejected by the appellants, and they had a right to reject it unless it was lawful. Was it? We think it was not, and that is the second answer to the question respondent propounds.

Without deciding whether a previous failure to pay the rent, either from dishonesty or inability, would justify a telephone company in refusing to again install an instrument removed on account of the default until it was made whole for the back rent and cost of installation, we do decide and hold that when the customer is solvent and it is fairly doubtful if any back rent is owing, or, as in this case, when the subscriber has paid for all the service he got (and there is practically no testimony that these appellants owe anything, while they are shown to be financially responsible), a company can not insist on that condition— can not be judge in its own case

and decide the dispute. The appellants paid the rent to the first day of October, but, as the service was a failure, notified respondent to remove the instrument at the end of the quarter. Instead of doing so, it let it remain and tinkered with it until the middle of December, when it began to work well; then appellants wished to have it, offered to pay rent in advance and to pay from the day it became efficient. Their request was refused unless they would pay for the time the machine rendered no service. Could anything be more unjust? Respondent's contract included of course, the rendering of reasonably good telephone service; it failed to keep this obligation and yet insisted on full payment. If in fact, fair service was rendered during the time in dispute, the company has a good case to collect the rent for that time (Webster Telephone case, 17 Neb. supra), but can not arbitrarily cut off appellants from a hearing and force them to submit to its terms or do business without a telephone. The facts of cases wherein a company or individual, bound to serve the entire community, seeks to withdraw service from some customer on account of defaulted payments, or other omission to comply with his contract, must be attended to, and if it is apparent that no good cause exists for the withdrawal and that the defendant will not be harmed by compelling it to continue to supply the customer, it should be compelled; otherwise the remedy of mandamus, which all the authorities agree may be invoked in such cases, will prove useless.

Rules actually embodied in the contract between parties more just and reasonable than respondent's alleged rule, have been adjudged unreasonable and void; notably one which provided that the defendant company might remove the instrument (in that case a "stock ticker") from the plaintiff's office and discontinue the service without notice, whenever the company deemed the customer had violated any of the conditions of his contract. This rule or stipulation was repudiated because it allowed the company to arbitrarily pass on the cus-

State ex rel. v. Longfellow.

tomer's rights.    Smith v. Gold & Stock Tel. Co., 42 Hun, supra.

Nor does the fact that the respondent company provides public stations for the use of every one who will pay toll, constitute a defense.    It must furnish private service in residences and offices when asked; for in that way only can all persons be assured of equal privileges.    Cen. Union Tel. Co. v. State ex rel., 118 Ind. 194; Same v. Same, 123 Ind. 113.

The facts in this case are uncontradicted and the lack of declarations of law is therefore immaterial, if they would be otherwise necessary.

From the considerations above stated, it results that the judgment must be reversed and the cause remanded with a direction to the lower court to grant a peremptory writ of mandamus to the plaintiffs for the relief they ask.    *Bland, P. J.,* and *Barclay, J.,* concur.