(77 South. 927)

BIRMINGHAM WATERWORKS CO. v. DAVIS. (6 Div. 374.)

(Court of Appeals of Alabama. Jan. 15, 1918. On Rehearing, Feb. 6, 1918.)

1. DAMAGES ⬲91(3) — PUNITIVE DAMAGES—MALICE.
In order to obtain punitive damages, it is not necessary to show malice, but is sufficient to show such an entire want of care as to raise the presumption that the person at fault is conscious of the probable consequences of his carelessness.

2. WATERS AND WATER COURSES ⬲203(15)—WATER SUPPLY—PAYMENT UNDER COMPANY DEMANDS.
Where water company demands more than is due, the law does not require the user to pay under protest in order to maintain an action for damages for shutting off the water.

3. WATERS AND WATER COURSES ⬲203(13)—WATER SUPPLY—SHUTTING OFF.
A water company has the right to enforce payment of a water bill by shutting off the water, but if the bill is for more than is due, it is liable for damages.

4. WATERS AND WATER COURSES ⬲203(13)—WATER SUPPLY — REFUSAL TO FURNISH—PUNITIVE DAMAGES—QUESTIONS FOR JURY.
Where a water company demands more from a user than is due and shuts off the water knowing that the bill is excessive, it is for the jury to say whether the user is entitled to punitive damages.

5. WATERS AND WATER COURSES ⬲203(13)—WATER SUPPLY—EXCESSIVE CHARGE—TENDER.
Where charge of water company is excessive, and the company tells the user that it will not accept less than the bill rendered, the user need not make a tender in order to sue for punitive damages for shutting off the water.

6. WATERS AND WATER COURSES ⬲203(13)—WATER SUPPLY — REFUSAL TO FURNISH — PUNITIVE DAMAGES.
A verdict of $600 punitive damages against a water company for turning off the water of a user held not excessive.

On Rehearing.

7. APPEAL AND ERROR ⬲833(3)—REHEARING—APPLICATION—TIME.
Application for rehearing filed after the expiration of 15 days allowed cannot be considered.

Appeal from Circuit Court, Jefferson County; Romaine Boyd, Judge.

Action by Max Davis against the Birmingham Waterworks Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Action by plaintiff against the defendant for damages for negligently and wantonly disconnecting plaintiff from water supply.

Percy, Benners & Burr, of Birmingham, for appellant. Samuel B. Stern, of Birmingham, for appellee.

SAMFORD, J. [1] On the trial of the case, the question of punitive damages was submitted to the jury, and the first insistence of appellant in brief is that the court erred in so doing. The rule that constitutes grounds for the recovery of punitive damages has been stated in Lienkauf & Strauss v. Morris, 66 Ala. 406, Wilkinson v. Searcy, 76 Ala. 176, and followed by this court and the Supreme Court, in many cases, the last utterance being in the case of Shepard v. L. & N. R. R. Co., 76 South. 850,[1] but where there is such an entire want of care as to raise the presumption that the person at fault is conscious of the probable consequences of his carelessness, to the danger of injury to the person or property of others, the doctrine declared is that punitive damages are allowable, not only for acts maliciously perpetrated, but also, in cases where one knowingly, wantonly, and recklessly does an act fraught with probable injury to persons or property, and ultimately produces such injury or damage. In the instant case, the evidence disclosed a bona fide claim on the part of plaintiff that the charges for water during the quarter were excessive.

[2] The defendant was the public service corporation having the monopoly of furnishing to the plaintiff water, one of the necessities of life. "Water, one of the necessaries of life, is now almost universally supplied to the inhabitants of cities and towns through the medium of the public service corporation. Surface water in cities and towns is notoriously subject to contamination, and is, for that reason often dangerous." The instant case is very similar to the case of Birmingham Waterworks Co. v. Keiley, 2 Ala. App. 629, 56 South. 838, from which the foregoing quotation is taken, and in that case the opinion goes on to say:

"The water service which was denied by appellant to appellee was of importance to him, and its denial, according to his testimony, put him and his family to inconvenience, hardship, and expense."

In the Keiley Case, the plaintiff made a tender of the amount due, and in the instant case, the plaintiff made numerous efforts to arrive at the correct amount due from him to the water company. Each time he was met with the demand that he pay the entire $51.45, or his water would be cut off. It is true that by paying the entire amount of the disputed bill, under protest before the water was cut off from his premises, the plaintiff could have forced the water company to

<hr/>

⬲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] 200 Ala. 524.

supply him with water while he litigated with it the amount of the bill, but as in the Keiley Case, this course was not required of him by the law. For the law to require such a course would be, as said in Wood v. Auburn, 87 Me. 293, 32 Atl. 908, 29 L. R. A. 376, to violate "the fundamental juristic principle of procedúre. That principle is, that the claimant, not the defendant, shall resort to judicial process." In this connection, and as setting forth our views, we cannot do better than quote at length from the case of Birmingham Waterworks Co. v. Keiley, 2 Ala. App. 639, 56 South. 841, as follows:

"The appellant certainly has the legal right, by the punitive power of discontinuing its service, to coerce out of unwilling or laggard debtors the payment of its just demands. On account of the number of its customers, the character and size of many of its accounts, and, in fact, the necessity of such authority for the orderly conduct of its business, the law should and will be swift in upholding appellant in the legal and orderly exercise of that power. But the law has not conferred judicial authority upon appellant, or the right, by its punitive power of discontinuing its service, to coerce payment of a demand not just. We think that there can be no dispute about the soundness of the proposition that, when the correctness of a bill of a public service corporation is disputed by one of its customers and the company, by reason of the failure of such customer to pay such bill, discontinues its service, it does so at its peril, and, if in the wrong, is liable to compensatory damages in any event, and, when the circumstances justify it, to punitive damages. To use the language of Mays, J.: 'It is a public service corporation, monopolistic in its nature, and the patrons have no choice but to accept its service, and they have not the privilege of selecting to do business with a competitor, because there is no competitor, and for this reason the rights of the public should be carefully guarded against oppressive methods used for the purpose of collecting unjust demands. The necessities of the law must meet modern conditions.' Telegraph Co. v. Hobart, 89 Miss. 252, 42 South. 349."

The defendant knew that the act of cutting off plaintiff's water was fraught with probable injury to the plaintiff, and that it would ultimately produce such injury. It knew that the plaintiff was making a claim that the amount claimed was excessive. It knew that the amount demanded by it was far in excess of services rendered by it to other customers with the same number of openings; that the amount demanded for this quarter was far in excess of anything that had ever been paid or demanded of the plaintiff. It knew that under normal conditions, the water rent for the quarter would probably not exceed $8 or $10. It knew that the minimum charge for the quarter was $3.09. It had been informed by plaintiff that no unusual amount of water had been used on his premises, and that his water openings and plumbing had been tested by a competent plumber. It knew all these things, and yet it used the punitive power which it had to coerce the plaintiff into paying a demand which had not been ascertained to be correct. In other words, it had constituted itself both judge and jury to pass upon the law and the facts, in trying the case of itself against the plaintiff, and had rendered judgment in favor of itself, and then proceeded to execute the judgment by cutting off the plaintiff's water.

[3, 4] While the courts recognize the right of a water company to discontinue its service, in order to coerce out of unwilling or laggard debtors the payment of its just demands, the law cannot permit corporations operating monopolies to so exercise the punitive powers placed in them as that they may constitute themselves both judge and jury to pass upon controversies between themselves and their customers. This would open the door wide for petty tyrannies that the courts will not tolerate for an instant. The courts were open to the defendant to test the question as to whether or not the amount demanded was the correct amount. If that had been ascertained, and the judgment had not been paid, the defendant unquestionably would have had the right to discontinue the service, but, acting in the way it did, it was a question for the jury under the facts to say whether the plaintiff was entitled, not only to compensatory damages, but to punitive damages for the acts complained of.

From what has been said, it follows that the court did not err in refusing to give the affirmative charges as requested by the defendant, and made the basis of assignments of error 12, 13, 15, and 16.

[5] That part of the oral charge of the court in the following words:

"If the jury are reasonably satisfied from the evidence that Mr. Davis did not owe the defendant $51.45 on the 1st day of October, 1915, your verdict must be for the plaintiff, if you are reasonably satisfied from the evidence that the defendant claimed the amount of $51.45 from the plaintiff and cut off his water for failing to pay such amount of $51.45."

The question of a tender by the plaintiff to the defendant of the correct amount due is not involved in this suit. It does not appear that the plaintiff knew the exact amount due, and the only amount demanded by the defendant was $51.45, which is claimed, not only to be excessive, but exorbitant, and although defendant may have signified its willingness to have accepted $25 by way of compromise, there is nothing in the record to show that the $25 was not excessive and exorbitant as well. It was a question for the jury, under all the evidence, to say whether or not when the defendant cut off the plaintiff's supply of water, it did so with reckless disregard of the legal rights of the plaintiff, in an effort to coerce the payment out of the plaintiff of a past-due and an unjust demand.

The foregoing conforms to our idea of justice, and conforms with the principles of fair dealing. Public service corporations receive a public franchise for the purpose of serving the people for reasonable compensation, but they have no right to use privileges thus granted for the purpose of oppression,

discrimination, or coercion, and such acts will not be tolerated.

[6] Under all the facts in this case, we are not willing to say that the judgment of $600 is excessive. Where punitive damages are recoverable, such recovery as will meet the demands of the instant case should never be disturbed by the appellate court.

It follows, therefore, that the court did not err in refusing to grant the motion of the appellant for a new trial.

We find no error in the record, and the judgment is affirmed.

Affirmed.

On Rehearing.

PER CURIAM. [7] The application was filed, after the expiration of the 15 days allowed, and therefore cannot be considered.