12951

O'NEAL v. CITIZENS PUBLIC SERVICE COMPANY
OF SOUTH CAROLINA

(154 S. E., 217)

*Mr. Randolph Murdaugh,* for appellant,

*Messrs. Hugh O. Hanna* and *George Warren,* for respondent.

July 16, 1930.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE C. T. GRAYDON.

This was an action on the part of the plaintiff, M. H. O'Neal, against the Citizens' Public Service Company of South Carolina, a corporation, for damages alleged to have been sustained by plaintiff by reason of the discontinuance of his telephone service in October or November, 1928, and also for refusal thereafter to permit plaintiff to use the long-distance pay stations which were operated by the defendant.

The complaint alleged, in substance, in Paragraph 1, the residence of the plaintiff and the corporate existence of the defendant and that W. F. Sanders was the agent and manager of the corporation.

Paragraph 2 alleged, in substance, that in October or November, 1928, the defendant, through its agent and manager W. F. Sanders, in the presence of a number of people, presented a telephone bill to the plaintiff in the office of the Western Union Telegraph Company; that plaintiff requested an itemized statement of the charges on said bill for the purpose of checking the same; that the amount of the bill was approximately $30.00 and that the plaintiff at the time complained that he was being charged for service which

was not rendered to him on account of his telephone being out of commission; that the agent of the defendant admitted that the bill was not correct, and in the meantime the plaintiff offered to pay 50 per cent of the bill and to pay the balance when settlement could be effected; that defendant refused to do this, notifying the plaintiff that, unless the bill was paid at once, the telephone would be cut off.

Paragraph 3 alleged, in substance, that the plaintiff went to a regular pay station and attempted to put in a long-distance call, for which service plaintiff was ready to pay the toll required in advance, that the call was refused, and that W. F. Sanders, the agent of the defendant, admitted that he had given instructions not to permit the plaintiff the use of the pay stations, and that said acts on the part of the defendant were discriminatory and in violation of the rights of the plaintiff.

Paragraph 4 alleged, in substance, that on another occasion plaintiff attempted to put in a call for Savannah, stating that the call was important; said call being placed in through the Hampton Banking Company and "Okayed" by Mr. Gifford, the cashier, but that this call was also refused.

The fifth paragraph alleged, in substance, that all of the aforementioned acts were to his great damage and were a willful, negligent, and conscious invasion of plaintiff's rights, and prayed for the sum of $3,000.00 as damages.

The answer of the defendant admitted its corporate existence, and denied each and every other allegation in said complaint contained.

It will be seen from the above that the complaint of the plaintiff contained a two-fold cause of action—one being based on the alleged improper discontinuance of his telephone service when there was then pending a disputed bill; the other for the refusal of the defendant to permit the plaintiff to use the pay stations upon offer to pay the toll in advance. There was no question made by the defendant

that these causes of action were not properly united. *Barrett v. Broad River Power Co.,* 146 S. C., 85, 143 S. E., 650.

The law in South Carolina is that a public service corporation has no right to refuse service to a person or to discontinue his service when there is then pending a legitimate dispute as to the correctness of the bill rendered. The Court has held that mandamus is an appropriate remedy in cases of this character. *Poole v. Paris Mountain Water Co.,* 81 S. C., 438, 62 S. E., 874, 876, 128 Am. St. Rep., 923; *Benson v. Paris Mountain Water Co.,* 88 S. C., 351, 70 S. E., 897.

This Court has further laid down the rule that, where the bills are admittedly correct, it is the duty of the subscriber to pay such just bill, and the public service corporation has a perfect right to discontinue service under such conditions. This is clearly set forth in the case of *Barrett v. Broad River Power Company, supra.*

The first ten exceptions of the defendant charge error in the refusal of the Circuit Judge to grant the motions of the defendant which were timely made, both for a nonsuit and a directed verdict. The theory upon which the defendant claimed both a nonsuit and a directed verdict was that the evidence was clear and conclusive, that the bill was past due, just, and owing, and that there was no legitimate dispute about it. In those exceptions the defendant further claims that the proper remedy was by injunction to prevent the defendant from discontinuing plaintiff's said service.

The plaintiff had a threefold remedy. He could have applied for a mandamus to compel the restoration of service, or for an injunction to prevent the discontinuance, or entered a suit for damages for the unlawful and willful discontinuance of service. The plaintiff chose to adopt the latter of these three remedies, and in doing so he was within his legal rights.

The defendant in the exceptions overlooks the fact that, even if the jury had found that the bill was just and owing and that the defendant had a perfect right to discontinue plaintiff's telephone service, the defendant would have had no legal right to refuse to furnish the plaintiff with service when he offered to pay the legal tolls required of him.

The Circuit Judge could not have directed a verdict when there was an additional wrong alleged to that of the unlawful discontinuance of service. The Circuit Judge correctly charged the jury as to the right of the defendant to discontinue service, and then went further and charged the jury on the right of the plaintiff to demand damages under the alleged second wrong. The first ten exceptions are therefore overruled.

Exception 11 alleges error in the presiding Judge refusing to charge the jury, at the defendant's request, as follows: "I charge you, as a matter of law, that a telephone company has the right to discontinue its service to any of its subscribers, upon the failure of the subscriber, after notice thereof, to pay the recent and just bills for the service given him; and also the right to refuse to give him further service until its bills are paid; and, if you should find from the testimony in this case, that the bill of the telephone company was just and correct and that payment of same was demanded from the plaintiff, M. H. O'Neal, and that he refused to pay same, then and in that event I charge you that you will have to find a verdict for the telephone company, the defendant in this case."

This request was perfectly proper under the first wrong alleged in the complaint, but the Circuit Judge had already covered this proposition of law in his general charge, and this request would have eliminated from the consideration of the jury the question of the alleged second wrong upon which plaintiff was relying. It would have been error for

the Judge to have charged this request in the form presented by the defendant, and this exception is therefore overruled.

Exception 12 alleges error on the part of the Circuit Judge in refusing to charge the jury that where there was a disagreement as to the amount justly due it was proper and correct for the plaintiff to have paid the same under protest, to sue for the return of the same, and to apply to the Court for an order enjoining the defendant from discontinuing his service.

As above stated, the plaintiff did not have to pursue this course, and this was not his exclusive remedy.

For this Court to lay down such a principle would mean that it would be necessary for a telephone subscriber in a dispute over a small amount to engage in expensive litigation to prevent an injury being done to him by the public service corporation. It would be just as reasonable to say that it was the duty of the public service corporation to sue the plaintiff and secure a judgment against him before discontinuing his service. If the public service corporation relied on the correctness of its bill to discontinue service and such bill is found to be correct, under the *Barrett case, supra,* it is an absolute defense. If the bill is not correct, however, then the discontinuance is made at the peril of the company. This also disposes of exception 13.

Exception 14 complains that the Judge refused to charge the jury that the bill was just and correct and that plaintiff could not recover, but this exception also overlooks the fact that the plaintiff was relying upon an additional wrong alleged in the complaint.

Exception 15 alleges error in the Circuit Judge charging the following proposition of law: "I charge you, gentlemen, that the law requires a public service corporation, such as this, to render service at the pay station whether such person is indebted to them or not in any amount. In other words, gentlemen, the company could not refuse the service on the ground that the one that offered to pay the cash was a dis-

honest man, and would not pay his debt theretofore to the company."

This was a fair and correct statement of the law. The plaintiff, although he owed the defendant a bill, had a perfect right to use the pay station upon tender or offer to pay the legitimate toll therefor. Suppose that a man owed a railroad corporation a balance on a freight bill, could such corporation refuse to accept a fare tendered by such person for passage on its trains? The plaintiff had a right to use the pay stations of the defendant upon payment of the legitimate charges demanded, and the defendant had no right to refuse him this service.

Exception 16 alleges error in the refusal of the Circuit Judge to grant a new trial; that the verdict of the jury was excessive and capricious, being based on prejudice and not on the facts of the case. This was a motion directed to the discretion of the trial Judge when there was testimony upon which such verdict could be based, and this Court has held in numerous cases that such discretion will not be disturbed unless prejudicial error can be shown or unless the action of the Circuit Judge is in violation of some well-defined principle of law. There was sufficient testimony to sustain the verdict of the jury.

The exceptions are overruled, and the judgment affirmed.

Messrs. Justices Blease, Stabler, and Carter, concur.

Mr. Justice Cothran (dissenting) : The main question in this appeal is whether a telephone company has the right to deny to one of its subscribers the service of a long-distance pay station, upon his tender of the cash toll, when such subscriber is in arrears for the ordinary telephone service and also for long-distance calls.

It appears that the plaintiff was a regular subscriber of the telephone company, having a local telephone installed in his home, and accustomed to local and long-distance service from that telephone. As alleged in the complaint, the defendant presented to the plaintiff a bill "alleging the same,

to be the amount of telephone bill for house and long distance calls that plaintiff owed to defendant," amounting to $30.00. The plaintiff was not satisfied with the bill, insisting that he was entitled to a deduction for the time that the system was interrupted by a storm, and that he wanted an itemized account, particularly of the long distance calls, for the purpose of checking up the account. The plaintiff offered to pay half of the bill and allow the remainder to await a settlement between them. The defendant's manager declined this proposition and declared his intention of discontinuing service to the plaintiff unless the entire bill was paid. Accordingly, instructions were given to the operator at "central" not to extend any service, local or long distance, from local or pay stations, to the plaintiff until the past-due bills for local and long distance service had been paid. About an hour later the plaintiff went to a long distance pay station and called for a connection with Savannah, offering to pay for it in advance; he was informed by "central" that she had "been instructed not to let you use this telephone system." Later on the same day the plaintiff met the manager, who confirmed the instructions to "central." In a few minutes the plaintiff called two witnesses to hear the instructions from the manager, who was still present. The manager then said: "I have reconsidered, Mr. O'Neal. You can use the pay station and no other 'phone in town." A little later the plaintiff went into the bank, which was not a pay station, and called for a long distance connection, which was refused him.

The presiding Judge appears to have considered the complaint as practically containing two separate causes of action —the wrongful discontinuance of regular service, local and long distance, from the home telephone of the plaintiff; and the wrongful refusal of the defendant to give the plaintiff long distance service from a pay station after he had offered to pay the toll in advance.

As to the first "branch of the case," as his Honor termed

it, he charged the jury that it is a reasonable regulation by a telephone company that permits it, upon the failure of a patron to pay a correct bill for service, to discontinue service to such a patron by "cutting out the telephone."

As to the other branch of the case, he charged that a member of the public who calls for a connection at a pay station, upon tender of the tolls, is entitled to the service, regardless of the fact that there are outstanding bills due by him to the telephone company.

There can be no objection to the charge upon the first branch of the case. As the Supreme Court of the United States has declared in the case of *Southwestern T. & T. Co. v. Danaker,* 238 U. S., 482, 35 S. Ct., 886, 888, 59 L. Ed., 1419, L. R. A., 1916-A, 1208: " *   *   * Not only are telephone rates fixed and regulated in the expectation that they will be paid, but the company's ability properly to serve the public largely depends upon their prompt payment. They usually are only a few dollars per month, and the expense incident to collecting them by legal process would be almost prohibitive.   *   *   * Some regulation establishing a mode of inducing prompt payment of the monthly rentals was necessary. It is not as if the company had been free to act or not, as it chose. It was engaged in a public service which could not be neglected. The protection of its own revenues and justice to its paying patrons required that something be done."

The cases from our own Court fully sustain the proposition. *Poole v. Water Co.,* 81 S. C., 438, 62 S. E., 874, 128 Am. St. Rep., 923; *Benson v. Water Co.,* 88 S. C., 351, 70 S. E., 897; *Barrett v. Power Co.,* 146 S. C., 85, 143 S. E., 650, 656; *Johnson v. Carolina Co.,* 106 S. C., 447, 91 S. E., 734.

The main issue, as I have stated in the opening, is as to the correctness of his Honor's charge in reference to the second branch of the case: "I charge you, gentlemen, that the law requires a public service corporation, such as this, to

render service at the pay station, whether such person is indebted to them or not in any amount. In other words, gentlemen, the company could not refuse the service on the ground that the one that offered the call was a dishonest man and would not pay his debt theretofore to the company."

I pass by the last paragraph in this quotation with the observation that the declaration was not at all timely and was calculated to prejudice the defendant; it was not a question whether the previous indebtedness was due to dishonesty, but whether honest or dishonest, if the patron was indebted on account of past unpaid bills for regular service and long distance calls, the company had the right to decline the service.

I think that the error of the presiding Judge consisted in his apprehension that the two supposed "branches" of the case were separate and distinct from each other, practically separate torts. It is not like a case in which a citizen who had no previous relation with the telephone company was refused service at a pay station when he tendered the required toll, or in which he was indebted to the company upon an entirely different transaction.

It is a well-known fact that a subscriber who has a telephone in his home or in his office has the privilege of calling "long distance" from his private telephone, and of having the toll charged to his telephone; it is an incident of his relation with the telephone company, a right which he has, and one which is forfeited for the time being by his failure to pay "just and recent bills," upon demand.

After his service has been properly discontinued by reason of his refractory conduct, which included local and long distance calls, he has no right to a resumption of it until he has complied with the reasonable condition of paying his arrearage.

The reasoning of the Supreme Court of the United States, above quoted, is as applicable to this condition as to the

one there under discussion. To permit the recalcitrant patron to demand service even at a pay station is to permit him to evade his obligation to settle all past bills growing out of his relation to the telephone company and to deprive the company of essential means of collecting its revenue for its own protection and to enable it to respond to its public obligations.

The Court was requested by the defendant to charge as follows, which was refused: "I charge you, as a matter of law, that a telephone company has the right to discontinue its service to any of its subscribers upon the failure of the subscriber after notice thereof, to pay the recent and just bills for the service given him; and also the right to refuse to give him further service until its bills are paid; and, if you should find from the testimony in this case, that the bill of the telephone company was just and correct and that payment of same was demanded from the plaintiff, M. H. O'Neal, and that he refused to pay same, then and in that event I charge you that you will have to find a verdict for the telephone company, the defendant in this case."

It is suggested in the opinion of Mr. Justice Graydon that this was correct so far as the first branch of the case is concerned, but inapplicable to the second. I think that it was equally applicable to both, and should have been given. It contains the hypothesis that the bill was recent and just; it contained items for long distance calls as well as for local service.

In the *Poole case,* quoted in the *Barrett case,* the Court said: "While a public service water company has the right to cut off a consumer's water supply for nonpayment of recent and just bills for water rents, and may refuse to engage to furnish further supply until said bills are paid, the right cannot be exercised so as to coerce the consumer into paying a bill which is unjust, or which the consumer in good faith and with show of reason disputes, by denying him such a prime necessity of life as water, when he offers to

comply with the reasonable rules of the company as to such supply for the current term."

I do not see any difference between the demand for service for the "current term" and the demand for service at a pay station; the regulations in each case being performed. The quotation clearly implies that, if the rendered service is not paid for, the service for the current term cannot be claimed.

In the *Barrett case,* the Court said: "Under the *Poole case,* and the other cases resting on that decision, the defendant here had the right to discontinue its service to the plaintiff upon the nonpayment by the plaintiff of recent and just bills for the service furnished him, and had, also, the right to refuse a further supply of electricity until those bills were paid."

The service at a pay station was but a substitute for the service from the plaintiff's home telephone; he had no right to claim it as long as the same service from his home telephone had been, as hypothetically stated, rightly discontinued.

The principle deduced from the decided cases is that a public service corporation has no right, by coercion, to insist upon the payment of an honest disputed bill as a condition of supplying or continuing the utility; but, where the bill is undisputed, as it is hypothetically assumed in the present case, it has that right.

It is difficult for me to draw a line of distinction between the right of a public utility company to *discontinue* service upon the nonpayment of recent and just bills, a right which is conceded, and its right under the same circumstances to refuse what is practically a continuance of service. If water service for instance should be discontinued for the reason stated, certainly the consumer would not be entitled to the public duty which the water company owed as a public utility company upon compliance with its regulations, of future service without paying the bill, the nonpayment of which caused the discontinuance of service.

I think that the Circuit Judge should have submitted to the jury the question whether the unpaid bill was recent and just, and should have charged that, if it contained credit items for long distance calls which the plaintiff had put in from his home telephone and which he refused to pay, the defendant had the right to refuse him any service whatever, local, long distance, or pay station, until his bill had been paid.