168 So. 166

## PEDDICORD v. TRI–CITY GAS CO.

### 7 Div. 320.

Supreme Court of Alabama.

April 9, 1936.

Rehearing Denied May 28, 1936.

---

[1] Ante, p. 66.

[2] Ante, p. 5.

L. B. Rainey and E. G. Pilcher, both of Gadsden, for appellant.

O. R. Hood and Roger C. Suttle, both of Gadsden, for appellee.

BOULDIN, Justice.

Action in damages for wrongful discontinuance of gas service by a public utility. The trial court gave the affirmative charge at the request of defendant. Plaintiff appeals.

The plaintiff, desiring to open up a public eating place under the name of Del Monte Barbecue & Lunch Room, made a "preliminary request for service" in writing, saying: " * * * I agree to pay $10.00 with standard application and $5.00 a week until a total of $25.00 has been paid which is to be used by the Company as a deposit to guarantee payment of bills rendered for such service."

The standard application pursuant to rules of the Public Service Commission was also filed and accepted, the $10 cash paid, and the service duly installed on August 18, 1934.

None of the weekly payments were made. No statement of same or demand was made therefor until September 19th, on which date the utility sent the cut-off man to demand immediate payment of the $15 balance due on the deposit, and to cut off service if not paid.

Demand was made, payment not made, and without further notice or delay the service was cut off within some thirty minutes.

■ Thus far the evidence is without conflict. There is some conflict in the testimony touching the interview between plaintiff and defendant's agent at the time. Some evidence for defendant tended to show plaintiff consented to cutting off service; but other evidence tended to show that plaintiff, being engaged at the moment, requested that he be given some two hours, and that defendant's agent call again. .

This and other testimony made it a question for the jury whether there was a refusal to pay, and consent to discontinuance of further service, or an express or implied promise to pay, given a little time.

One important inquiry is whether the rules promulgated by the Public Service Commission govern the discontinuance of service in this case.

Rule 6 reads: *"Deposits.* (a) Any utility may require at any time from any customer, or prospective customer, a cash deposit intended to guarantee payment of current bills, when in the judgment of the utility such deposit is necessary. Such required deposit shall not exceed the amount of an estimated bill for two regular billing periods, or in the case of a customer whose bills are payable in advance, it shall not exceed an estimated bill for one regular billing period."

This rule further provides for payment of interest by the utility while the deposit is held.

Rule 10 is entitled: *"Discontinuance of Service to Customers."* Subdivision (a) reads: "(a) No utility shall discontinue its service to any regular customer for failure to make payment for such service until the utility shall have first given notice to the customer of his delinquency and of its intention to disconnect service on account of such delinquency. If such delinquent account is not paid within five

(5) days after such notice is given, the utility may then disconnect service without further notice."

This subdivision further provides that the customers may pay any time before actual disconnection; but if he waits until the company sends a man to disconnect, he must pay an added charge of 50 cents.

If disconnected, an added charge of $1 is fixed for reconnection.

Subdivision (c) looks to a suspension of service, without terminating the contract for service, in case the receiving appliances on the customer's premises are so altered or changed as to prevent a registration of the service received, or if, for any other reason, the customer is receiving or about to receive service without full compensation.

Appellee's view, in which the trial court seems to have concurred, is that rule 10 (a) is limited to bills for services rendered from time to time, has no application to deposits of this character, and, as matter of law, the utility had the right to terminate the contract for service at once on failure to pay on demand.

■ It is the law that a public service company may make and promulgate reasonable rules, not in conflict with those of the Public Service Commission, no statute forbidding.

It does not appear the utility had made any special rule touching discontinuance of a service already installed and in use by the customer, if the deposit was not made as per rule 6.

■ It is clear enough that the utility may require the deposit as a condition precedent to the rendition of service.

■ After the relation of a regular customer is established, the customer having made his outlays in the premises, and, in view of the loss, inconvenience, discomfort, and maybe hazard to health involved in a sudden discontinuance of service without warning, the general laws touching the reasonableness of rules, or discontinuance without rules, on the part of a public utility, are not the same as applied to many forms of contract, wherein a breach on the part of one clothes the other with a right to terminate immediately. 28 C.J. p. 567.

■ Our conclusion is that rule 10(a) is not limited to bills for services rendered. If so, under rule 6 the utility may, at any time, demand a deposit from a customer, and, under appellee's contention, cut off his service if not immediately paid. Rule 10(a) is general in its operation, applies to domestic gas service as well as others.

A sudden discontinuance of service may work hardship and even perils to the customer and his family.

We think all this was in mind when rule 10(a) was promulgated as a lawmade rule, and that it applies to all bills which accrue pending the service, upon which continued service depends.

The deposit, payable pending service, is in essence a bill or charge for service. There is no higher obligation to pay in a deposit to guarantee payment for service, than to pay for the service already received. Both are for service, demands which the utility may make for continuance of service. The reason for five days' notice is as applicable in the one case as in the other.

There was error in giving the affirmative charge for defendant.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.