133 So.2d 502

**COOSA VALLEY TELEPHONE COMPANY**

v.

**U. C. MARTIN.**

**7 Div. 623.**

Court of Appeals of Alabama.

Jan. 17, 1961.

Rehearing Denied Feb. 7, 1961.

Reversed on Mandate Oct. 3, 1961.

Moore, Thomas, Taliaferro, Forman & Burr, Birmingham, for appellant.

Starnes & Holladay, Pell City, for appellee.

CATES, Judge.

The telephone company is appealing from a judgment for $100 in favor of Martin, a practicing dentist in Pell City, in an action filed because of the company's stopping his telephone service.

In 1955 the St. Clair County Telephone Company was serving Pell City Alabama. At the end of that year the Coosa Valley Telephone Company bought the assets of the St. Clair company and was authorized by the Alabama Public Service Commission to serve the Pell City area.

The new company made its bills for service payable in advance, whereas the predecessor had billed in arrears. Thus, in January, 1956, Dr. Martin received a bill due the St. Clair County Telephone Company for service in December, 1955. Also, early in January the Coosa Valley company billed him for January service. But he did not pay this bill until early February. Throughout he kept on paying in arrears.

Thus, he never paid more than one telephone bill in any one month until his telephone was disconnected on May 29, 1959. He then had to pay two bills to get service restored.

Martin testified that he never received any notice from the company of any change in payment date. However, there was evidence of the company's sending all delinquent subscribers a "reminder" of past-due bills. No other threat of stopping service was made until Spring of 1959.

The company would justify its discontinuance of service under clause 10 of its tariff and Rule 15 (for telephone systems) of the Alabama Public Service Commission.

Rule 15 provides, insofar as applicable here:

"In the event of the non-payment of any sum due for exchange, toll or other service as set forth in the company's tariff, the telephone company *may* suspend the service or discontinue the service without suspension or following suspension of service, sever the connection and remove any of its equipment from the subscriber's premises provided the telephone company shall have first given notice to the subscriber of his

delinquency and of its intentions to suspend or discontinue service on account of such delinquency, * * *". (Italics added.)

Clause 10 reads in pertinent part:

"The subscriber shall pay monthly in advance *or on demand* all charges for exchange service and equipment and shall pay on demand all charges for toll service. * * *" (Italics added.)

Apparently Dr. Martin was never more than twenty days behind in paying. His monthly charge was $8.25. The company got a 1957 rate increase based on a pro forma return of six per cent. Six per cent on $8.25 overdue twenty days each month would be 33 cents a year.

The only substantial question we can perceive is whether or not clause 10 of the tariff, by reason of being filed with the Public Service Commission, is beyond the power of the telephone company to waive.

In Milwaukee Mechanics Ins. Co. v. Maples, 37 Ala.App. 74, 66 So.2d 159, 166, we find:

"* * * So long as a contract is executory the parties are at liberty to modify it at pleasure. No new consideration is necessary, mutual consent being sufficient. * * *"

We quote from Alabama Power Co. v. Capps, 226 Ala. 362, 147 So. 156, 157:

"Plaintiff offered to show that the parties operated under the same contract during the ginning season of 1929, and that all bills had been rendered to the 18th of the month, and no objection had ever been made thereto.

"The trial court erred in refusing this evidence, as tending to show a waiver, or an operative interpretation of the contract, which might work to the advantage of defendant the same as to the plaintiff."

And in Cobb v. Juneau Telephone Co., 1919, 6 Alaska 138, we find:

"* * * as to the sum due for March, the company, by failing to enforce the rule on April 20th, and by continuing to furnish service for the next monthly period, May, waived their own rule, and cannot now rely upon it for that month. By continuing to furnish service on February 1st they had waived it as to December, and by continuing to furnish service on March 1st they had waived it as to January. * * *"

The terms of settlement on a telephone utility contract are under the Public Service Commission's jurisdiction only as an incident to the Commission's power to assure nondiscrimination. We fail to see how a discrepancy such as presented is so discriminatory—at least in the absence of an *express statute*—as to prevent the company from amending its contract with Dr. Martin. This conclusion seems all the more valid because the origin of the company's rule, i. e., clause 10, was unilateral not consensual.

In Hiers v. Southeastern Carolinas Tel. Co., 216 S.C. 437, 58 S.E.2d 692, we find a number of cases, among the leading of which is Cumberland Tel. & Tel. Co. v. Hobart, 89 Miss. 252, 42 So. 349, which deal with the right of action and measure of damages for wrongful discontinuance of telephone service.

In Peddicord v. Tri-City Gas Co., 232 Ala. 445, 168 So. 166, Bouldin, J., pointed out that a public service corporation is held to a different standard from that applying to others when it attempts to assert contractual rights which conflict with its standing as a public utility. See also Birmingham Gas Co. v. McKinley, 228 Ala. 596, 154 So. 562; State ex rel. Payne v. Kinloch Tel. Co., 93 Mo.App. 349, 67 S.W. 684, 685.

Dean Pound, in his Jurisprudence, § 142 (Vol. V, pp. 351–356), at subsection 2(b)—self help under contract—points out, "The very terms of a legal transaction or the

legal incidents involved in the nature of the transaction may give a power of self help." Nevertheless, in the beginning of subsection 2, he emphasizes that self help should be discriminatingly employed since the law hedges it in with the doctrine of strict construction, Pound saying: "It subjects the weaker to the risk of the arbitrary will or mistaken belief of the stronger."

Blackstone points out that formerly those who failed to observe the detailed particulars in distraining could make themselves trespassers ab initio. iii Bl. Com. 15. See also Walters v. Meadors, 211 Ark. 505, 201 S.W.2d 24.

In the Hiers opinion, supra, the court quotes in its concluding paragraphs from O'Neal v. Citizens' Public Service Co., 157 S.C. 320, 154 S.E. 217, 70 A.L.R. 887, to the effect that disconnecting the telephone was not the company's sole remedy. From Birmingham Water Works Co. v. Davis, 16 Ala.App. 333, 77 So. 927, 928, we extract from Judge Samford's somewhat perfervid opinion:

> "While the courts recognize the right of a water company to discontinue its service, in order to coerce out of unwilling or laggard debtors the payment of its just demands, the law cannot permit corporations operating monopolies to so exercise the punitive powers placed in them as that they may constitute themselves both judge and jury to pass upon controversies between themselves and their customers. This would open the door wide for petty tyrannies that the courts will not tolerate for an instant. The courts were open to the defendant to test the question as to whether or not the amount demanded was the correct amount. If that had been ascertained, and the judgment had not been paid, the defendant unquestionably would have had the right to discontinue the service, but, acting in the way it did, it was a question for the jury under the facts to say whether the plaintiff was entitled, not only to compensatory damages, but to punitive damages for the acts complained of."

See also State ex rel. Payne v. Kinloch Tel. Co., supra (customer's solvency considered), and for an action by a utility for disputed bill, Louisville Tobacco Warehouse Co. v. Louisville Water Co., 162 Ky. 478, 172 S.W. 928.

Here, the telephone company could have brought an action against Dr. Martin before a justice of the peace (or in a like court) for the rent which it considered delinquent, and thereby have had determined the legal effect of the earlier failure of its not insisting that Dr. Martin pay twenty days in advance. Dr. Martin was not a transient customer; rather he had subscribed for telephone service for forty years. If we may moralize, the use of self help was an instance of the company's acting at its peril.

The judgment below is due to be

Affirmed.

CATES, Judge.

 Reversed and remanded on authority of Coosa Valley Telephone Company v. Martin, 272 Ala. 383, 133 So.2d 505.